THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KELLY DUNNING, Defendant-Appellant.

First District (2nd Division)    No. 79-1774

Opinion filed September 16, 1980.

James J. Doherty, Public Defender, of Chicago (James H. Reddy, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Defendant Kelly Dunning, charged by information with attempt murder, armed robbery and aggravated battery, was convicted of the latter two offenses in a jury trial and sentenced to 7 years for armed robbery and 4 years for aggravated battery, to run concurrently. A co-defendant, Gerald Lucena, was tried separately and is not a party to this proceeding. Defendant asserts on appeal that identification hearsay testimony was improperly admitted, a *Doyle* violation occurred, the prosecutor failed to offer rebuttal evidence after initiating impeachment of defendant during cross-examination, the prosecutor made several prejudicial comments dur-

ing closing argument, and the prosecutor improperly sought defendant's opinion on the veracity of State's witnesses. For the reasons set forth below, we affirm.

George Stoker testified for the State that on December 31, 1977, at 8 p.m., while working at a pizza carry-out business which he owned, he observed defendant, whom he identified in court, and a companion (later determined to be Gerald Lucena) enter the restaurant. He recognized both men immediately as former customers and had seen defendant on 20 or 30 previous occasions. After entering, Lucena jumped over the counter while wielding a pistol, and began wrestling with James Dietiker, the restaurant manager. Stoker ran into the office to phone the police and, as he closed the officer door, he heard a gunshot. He looked through the office window, a "one-way mirror," and observed Lucena taking money from the cash register while defendant was in the kitchen pointing a gun at Linda Johnson, a cook employed by the restaurant. After both assailants ran out of the restaurant, Stoker went to help Dietiker, who was shot as he struggled with Lucena for the pistol. When the police arrived, Stoker discussed the robbery with them and Dietiker was taken to the hospital. The police left and returned 15 minutes later with a white male whom Stoker identified as defendant's companion. After another 20 minutes the police returned with a black male identified by Stoker as the other assailant, defendant.

Linda Johnson testified that at about 7 p.m. on December 31, Dietiker sent her to buy milk at a local grocery store a few doors away. There she saw a man she had previously seen around the neighborhood arguing with the owner. The owner told him to leave and to "take this stuff out of there." She identified defendant as this man in court. Johnson then returned to the restaurant and at about 8 p.m., while working in the kitchen, she heard a gunshot. As she turned, defendant appeared with a double-barreled, sawed-off shotgun, pointed it at her, and told her not to move. About a minute later, defendant departed.

The testimony of James Dietiker corroborated that of Stoker and Johnson. He also recognized both assailants when they entered the restaurant, had seen defendant 30 or 40 times before, and identified him in court. Johnson was then called by the defense for further cross-examination and denied telling a police investigator that defendant was wearing a mask during the robbery.

Chicago police officer Ralph Culver testified that on the night of December 31, 1977, he and his partner responded to a robbery-in-progress call and, while proceeding to the area, received a description of the robbers over the radio. When they arrived at the scene, they met a man who identified himself as Billy Erwin. After speaking to him, a group of police officers went with Erwin to a second floor apartment in a nearby apartment building. A woman who answered the door allowed them to enter

and search the apartment during which he observed a man in a rear bedroom. When the prosecutor asked if Erwin then said anything, defendant objected. The court advised Culver that he could answer whether Erwin had spoken, but specifically directed that he not relate the substance of what was said. Despite this admonition, Culver stated that Erwin identified the man as defendant's accomplice. Defendant objected, and the court instructed the jury to disregard this testimony. Culver testified that he learned that the man's name was Gerald Lucena. When he searched Lucena, he found a .25-caliber pistol. Erwin, Culver, and several other police officers then went to a third-floor apartment where they observed a number of people including defendant. Culver and Erwin went into the hall and after a conversation with Erwin, Culver re-entered the apartment and arrested defendant. The substance of the hallway conversation was not revealed.

The State advised the court that Erwin was unable to appear because he had just undergone an appendectomy. A stipulation was read to the jury indicating that in the opinion of a ballistics expert, the bullet that struck Dietiker was fired from the pistol found on Lucena. The State rested.

Thomas Graney, an investigator for the public defender, testified for defendant that when he interviewed Linda Johnson on April 5, 1978, she indicated that the man who held a gun on her was wearing a mask during the robbery. Defendant then testified that he did not rob the restaurant and was at a New Year's Eve party when the police arrested him. The cross-examination of defendant relevant to this appeal will be discussed later in this opinion.

■■ ■ Defendant argues that Culver's testimony included two hearsay identifications: first, that Erwin identified Lucena as one of the robbers; and second, that Culver testified that he had a conversation with Erwin in the hall and, although the substance of the conversation was not given, the inference was clear that Erwin had there made an identification. The State maintains that neither statement was elicited as hearsay identification but merely as a presentation of the circumstances under which the arrests were made. As to the testimony concerning defendant, we agree. Culver simply testified that a conversation took place and that he subsequently acted thereon, without revealing the substance of the conversation. Such testimony was based on his personal knowledge and is competent to show the officer's investigatory procedure. (*People v. Daliege* (1976), 40 Ill. App. 3d 706, 709, 352 N.E.2d 247; *People v. Thomas* (1975), 25 Ill. App. 3d 88, 322 N.E.2d 597; *People v. Coleman* (1974), 17 Ill. App. 3d 421, 308 N.E.2d 364.) In contrast, Culver's earlier statement that Erwin had identified Lucena as defendant's accomplice was inadmissible hearsay; however, an objection to this statement was sustained and an instruction promptly given to the jury to disregard the evidence, thereby curing error. (*People v. Lindsay*

(1978), 67 Ill. App. 3d 638, 654, 384 N.E.2d 793.) Significantly, the statement by Culver was not responsive to the question and was made contrary to the court's admonition to refrain from revealing the substance of the conversation. See *People v. Kirkwood* (1959), 17 Ill. 2d 23, 160 N.E.2d 766, *cert. denied* (1960), 363 U.S. 847, 4 L. Ed. 2d 1730, 80 S. Ct. 1623.

Defendant next asserts that inquiry was improperly made into his post-arrest silence, requiring reversal under *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, and *People v. Upshire* (1978), 62 Ill. App. 3d 248, 379 N.E.2d 38. Culver testified that he arrested defendant and went on to describe defendant's clothing and physical condition. The prosecutor then asked "at this time what happened with regard to the defendant?" to which Culver responded "we questioned him but he refused to answer." There was no objection and the prosecutor immediately responded, "officer, no. Would you just describe—where was Mr. Dunning taken?" and Culver responded that defendant was taken downstairs to the squadrol. The prosecutor did not thereafter elicit any testimony on this silence, nor did he make reference to it in closing argument. In *Doyle*, as in *Upshire*, the prosecution vigorously pursued defendants' post-arrest silence in an attempt to discredit their exculpatory versions of the facts which they had not previously given. The supreme court held that such an attempt to impeach a defendant's testimony via his post-arrest silence was a due process violation because of the "insoluble ambiguity" of such silence.

■■ The State counters that in *People v. Foster* (1980), 81 Ill. App. 3d 915, 401 N.E.2d 1221, where a witness volunteered a comment on the defendant's post-arrest silence while the prosecutor was pursuing a permissible line of questioning, no *Doyle* violation would be sanctioned. We find *Foster* controlling here because the prosecutor was not purposefully attempting to impeach defendant through his post-arrest silence; rather, he was pursuing the circumstances attendant to the arrest when Culver, over admonition, volunteered the statement. The prosecutor immediately directed Culver's attention away from this area, and did not mention this statement in closing argument. The prejudice which *Doyle* seeks to prevent was thereby ameliorated. See also *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.

■■ Defendant contends that the prosecution committed error under *People v. Nuccio* (1969), 43 Ill. 2d 375, 253 N.E.2d 353, when, after asking defendant on cross-examination if he had used heroin, it failed to introduce evidence showing that he had.[1] The State responds that because the trial

---

[1] Defendant does not argue that the unanswered question itself was prejudicial under *People v. Smith* (1967), 38 Ill. 2d 237, 231 N.E.2d 185; *People v. Stadtman* (1974), 59 Ill. 2d 229, 319 N.E.2d 813; and *People v. Dzambazovic* (1978), 61 Ill. App. 3d 703, 377 N.E.2d 1077, which hold that it is improper for the State to introduce evidence of a defendant's drug use or addiction in the prosecution of a crime which is not drug related.

court sustained defendant's objection to this question, it was not required to present evidence on this point during rebuttal. In *Nuccio*, the court found error in the State's failure to complete the impeachment, begun during cross-examination, by the introduction of rebuttal evidence. In the present case, the State was not required under *Nuccio* to introduce rebuttal evidence because the trial court barred inquiry into that area. Defendant's related contention, that the prosecutor improperly asked whether defendant was aware of his brother's occupation, is also without merit. The question was ambiguous at best, and defendant's objection was sustained; we find no prejudice to defendant under these circumstances.

■■■ During closing argument, the prosecutor stated that defendant had been told to leave the grocery store earlier that night because the store owner said she was "sick of you [defendant] taking things from my store." As defendant accurately observes, the record does not indicate that the store owner made such a statement; rather, according to the testimony of Linda Johnson, the store owner told defendant to leave the store and "take his stuff out of here." Defendant did not object to this comment at trial nor raise it in his post-trial motion, but asserts on appeal that *People v. Beier* (1963), 29 Ill. 2d 511, 194 N.E.2d 280, *People v. Romero* (1967), 36 Ill. 2d 315, 223 N.E.2d 121, and *People v. Watson* (1977), 55 Ill. App. 3d 564, 371 N.E.2d 113, necessitate reversal. The State concedes misconstruction of this testimony, but correctly insists that failure to object coupled with the overwhelming evidence of guilt should not result in reversal. (See, *e.g.*, *People v. Butler* (1974), 58 Ill. 2d 45, 317 N.E.2d 35.) Defendant also asserts error was committed when the prosecutor, in rebuttal closing argument, stated that Lucena had been "reckoned with" in a different proceeding because this comment implied that Lucena was separately tried and convicted, resulting in prejudice to defendant; however, this comment was invited by an unfounded suggestion in defendant's closing argument that he had been unfairly singled out for prosecution because of his race. *People v. Ligon* (1973), 15 Ill. App. 3d 746, 305 N.E.2d 212; *People v. McMurray* (1972), 6 Ill. App. 3d 129, 135, 285 N.E.2d 242, *cert. denied* (1973), 411 U.S. 918, 36 L. Ed. 2d 310, 93 S. Ct. 1554.

■■ Defendant sets forth a series of questions asked of him by the prosecution seeking his responses as to whether the testimony of certain witnesses in conflict with his own testimony was true or not true. On each occasion, the defense successfully interposed objections; however, defendant urges that the confession raised by this "truth seeking" process denied him his right to a fair trial and supports reversal. Such questioning is clearly improper since it was the function of the jury to discern wherein lay the truth. Our review of the questions demonstrate, however, that in light of the strong evidence presented to the jury supporting the thesis of defendant's guilt, the questions could not have constituted a material factor in his

conviction or have otherwise prejudiced him so as to disturb the verdict. *People v. Addison* (1977), 56 Ill. App. 3d 92, 100-01, 371 N.E.2d 1025; *People v. Weaver* (1972), 8 Ill. App. 3d 299, 307, 290 N.E.2d 691.

In light of the positive identifications of defendant as a perpetrator of the crimes by three witnesses who had ample opportunities to observe him and had previously seen him on many occasions in the neighborhood, as well as in the restaurant, we find no prejudicial cumulative effect of the putative errors upon his entitlement to a fair trial. (*People v. Butler* (1974), 58 Ill. 2d 45, 49-50, 317 N.E.2d 35; *People v. Dyer* (1977), 47 Ill. App. 3d 63, 361 N.E.2d 770.) Accordingly, we affirm.

Affirmed.

PERLIN, P. J., and DOWNING, J., concur.