THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
BRUCE WILSON, Defendant-Appellant.

First District (1st Division)  No. 85—3518

Opinion filed March 31, 1988.

Steven Clark and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., Lynda A. Peters, and Charles E. Antonietti, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

After being convicted by a jury, defendant Bruce Wilson was sentenced to concurrent terms of 75 years for murder and 15 years' imprisonment for attempted armed robbery. The defendant appeals from the convictions, contending that (1) the trial court erred in allowing a police detective's hearsay testimony as to his investigatory actions and (2) the trial court improperly admitted a "mug shot" of defendant into evidence.

At trial, Danny Martinez testified that on the evening of November 12, 1983, he gave his neighbor, Adolpho Salgado, a ride to look for Salgado's stolen car. Their search was unsuccessful but Salgado's mother later told them that the car had been found at Douglas and Spaulding Streets in Chicago. At about 12:30 a.m. Martinez and Salgado drove to that address, where Delia Garcia and Raul Maguia, friends of Salgado's, were already present. While Salgado was working on his car in order to get it started, Maguia went to his own car to get a flashlight. Suddenly, Garcia started screaming. Martinez stated that he, Salgado and Garcia then saw two men try to push Maguia into his car. The group ran toward Maguia's car, where the defendant was struggling with Maguia while his accomplice searched Maguia's pants pockets. Defendant fired a gunshot in the direction of Garcia and Martinez. Martinez pushed Garcia behind a car which was across the street from where defendant and Maguia were. Defendant shot two more times at Martinez. Maguia had his arms raised upward and defendant shot him in the head. Defendant threw Maguia to the ground and both assailants fled the scene.

Delia Garcia corroborated Martinez' testimony and further testified that defendant was facing in her direction during the incident. She was approximately 20 to 25 feet away from Maguia and defendant. Garcia stated that she had an unobstructed view of defendant's face for about one minute and that the area was well lit. She de-

scribed defendant as the taller man, wearing an army jacket and dark pants. Garcia subsequently identified a photograph of defendant as the man who shot Maguia and several weeks later identified defendant in a lineup. Garcia also identified defendant at trial.

Officer John Grantz of the Chicago police department testified that during the early morning hours of November 13, 1983, he and his partner were investigating a stolen 1974 Cadillac automobile at Douglas and Spaulding Streets in Chicago. While at the scene, Delia Garcia and Raul Maguia arrived and stated that they knew the owner of the car. Garcia left in Maguia's automobile to contact the owner. Upon her return, Garcia parked Maguia's car at 3300 West Douglas. Shortly thereafter, Officer Grantz and his partner received a radio communication that a man was shot at 3308 West Douglas. Upon their arrival at the scene, they saw a male Hispanic lying in a pool of blood near the rear of an automobile.

Prior to trial, defendant's motion *in limine* to prohibit the State from discussing the contents of the confession made by defendant's accomplice, Antonio Davis, was granted. During trial, the court denied defendant's motion *in limine* seeking to prohibit the State's use of a "mug shot" book. During the exhibits conference, defendant further objected to the "mug shot" book going into the jury room for viewing. The court ruled that the book would be eliminated and at the close of the evidence sent back to the jury only two out of eight photos from the mug shot book which the jury had observed. After the jury returned guilty verdicts for murder and attempted armed robbery, a death penalty hearing was held. The trial court found that defendant's lack of a criminal history excluded him from consideration for the death penalty, but sentenced him to an extended term of imprisonment.

Defendant first argues that the trial court improperly allowed the State to introduce hearsay testimony to reinforce Delia Garcia's positive identification of defendant. Specifically, defendant alleges that the testimony of Detective John McKenna detailing the course of his investigation constituted inadmissible hearsay. At trial, McKenna testified that on November 17, 1984, he received an anonymous telephone call. As a result of the phone call, McKenna gathered information on Antonio Davis, defendant's accomplice, and arranged for Delia Garcia to view a photo book which contained a picture of Davis. Garcia identified Davis' photograph and subsequently identified Davis in a lineup. After Davis was arrested and interrogated, McKenna testified that defendant became a suspect. The trial court denied the defense objections to the admission of this testimony and denied objections to ref-

erences to this testimony in opening and closing arguments by the State. Defendant contends McKenna's testimony was inadmissible hearsay since it implied that Garcia's identification of defendant was correct because she identified the same person who was previously implicated by Antonio Davis.

■ When a police officer testifies as to the fact that he had a conversation with an individual and that he subsequently acted thereon, without revealing the substance of the conversation, that testimony does not amount to hearsay. (*People v. White* (1985), 134 Ill. App. 3d 262, 479 N.E.2d 1121; *People v. Griggs* (1982), 104 Ill. App. 3d 527, 432 N.E.2d 1176; *People v. Dunning* (1980), 88 Ill. App. 3d 706, 410 N.E.2d 1052.) This type of testimony is based on the officer's personal knowledge and is competent to show his investigatory procedure. (*Griggs*, 104 Ill. App. 3d 527, 432 N.E.2d 1176.) Where such testimony is confined strictly to the officer's physical activities, the bare occurrence of the conversation and the testimony is subject to cross-examination, this evidence is not within the legal definition of hearsay. *People v. Sanders* (1976), 37 Ill. App. 3d 236, 345 N.E.2d 757.

■ In the case at bar, Detective McKenna stated that there was a conversation with Antonio Davis and, after that conversation, he proceeded to gather information on defendant. McKenna did not testify as to the contents of the conversation with Davis or reveal that Davis had been convicted of a crime. The testimony was based on his personal knowledge and was competent to show the officer's investigatory procedure. (*Dunning*, 88 Ill. App. 3d 706, 410 N.E.2d 1052.) A review of the record shows that the State did not discuss the substance of the conversation at issue in either opening or closing argument. Further, his testimony as to his activities was in court, under oath, and subject to cross-examination. Under these circumstances, the trial court properly denied defendant's objections to this testimony as it was not within the definition of hearsay. We have reviewed the authority cited by defendant (*People v. Spivey* (1978), 58 Ill. App. 3d 677, 374 N.E.2d 1068; *People v. Warmack* (1976), 44 Ill. App. 3d 243, 358 N.E.2d 76), and find it to be unpersuasive. In the cases cited, the testimony clearly went further than a statement of the police officer's investigative procedures and revealed to some extent the contents of a conversation between the officer and the out-of-court declarant.

Defendant next contends that the trial court erred in admitting into evidence "mug shots" of defendant since it gave notice to the jury that defendant had been arrested on a prior occasion. The evi-

dence at trial revealed that on November 17, 1983, Detective McKenna took a police photo book over to Delia Garcia's house and that Garcia identified defendant's photo as the man who shot Raul Maguia. Thereafter, on January 27, 1984, Garcia picked defendant out of a lineup and identified him. During trial, the defense counsel's objection to the State's use of the photo book from which Garcia identified defendant was denied. Defendant also objected to the mug shot book going to the jury to view during deliberations. The trial court did not permit the use of the photo book by the jury during deliberations and sent only two photos of defendant from the book to the jury.

■■ We recognize that police photographs that are introduced merely as evidence of other crimes are inadmissible. (*People v. Hawkins* (1972), 4 Ill. App. 3d 471, 281 N.E.2d 72.) It is well settled, however, that police photographs are properly admitted into evidence where they are being introduced for the purpose of showing how the defendant could have been identified from them. (*People v. Cross* (1981), 100 Ill. App. 3d 83, 426 N.E.2d 623; *People v. Wheeler* (1979), 71 Ill. App. 3d 91, 388 N.E.2d 1284.) Defendant raised the issue in the case at bar as to whether the identification of defendant by Delia Garcia was accurate and correct. The jury heard testimony by Garcia that she first identified defendant from a photograph she was shown by the police, and subsequently she identified defendant in a lineup and made an in-court identification. We believe the trial court properly allowed the State to introduce the police photographs to show the jury how Garcia made the initial identification of defendant where the process of that identification was fundamental to establishing her credibility. See *People v. Brents* (1983), 115 Ill. App. 3d 717, 450 N.E.2d 910.

■■ Defendant contends that since the police photographs contained a legend with a date prior to defendant's arrest for this crime and included identification numbers, the legend should have been removed prior to viewing by the jury. (*People v. Lewis* (1984), 103 Ill. 2d 111, 468 N.E.2d 1222; *People v. Maffioli* (1950), 406 Ill. 315, 94 N.E.2d 191.) In *Maffioli*, our supreme court held that admission of police photographs of the defendant which bore a legend containing the name of a police department, identification numbers and a date was proper since the photos were not offered into evidence to show an arrest for another offense but were admitted as the photographs from which defendant was first identified. (See also *People v. Purnell* (1969), 105 Ill. App. 2d 419, 245 N.E.2d 635.) In our opinion, defendant's allegation of prejudice here is somewhat speculative since the legend complained of does not indicate a conviction of a crime. To find

this to be reversible error

> "would require us to presume that the jury recognized the arrest date for what it was, realized that the arrest date preceded the date of the offenses with which defendant was charged, and then adjudicated defendant's guilt on the basis of this prior arrest rather than the evidence produced at trial. We do not believe that justice requires that this course be taken." (*People v. Warmack* (1980), 83 Ill. 2d 112, 129, 413 N.E.2d 1254.)

Accordingly, we find the presence of a legend on the police photographs was not controlling and that there was no abuse of discretion by the trial court in allowing the jury to view the photographs. *People v. Cross* (1981), 100 Ill. App. 3d 83, 426 N.E.2d 623.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

QUINLAN and MANNING, JJ., concur.