(No. 69078.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. DARRYL SIMMS, Appellant.

*Opinion filed April 18, 1991.—Rehearing denied June 3, 1991.*

CALVO, J., took no part.
MILLER, C.J., joined by HEIPLE, J., dissenting.

Charles M. Schiedel, Deputy Defender, and Allen H. Andrews, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

Roland W. Burris and Neil F. Hartigan, Attorneys General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Kathryn M. Frost, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Darryl Simms, was convicted following a bench trial in the circuit court of Du Page County of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)), aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(a)), criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)), armed robbery (Ill. Rev. Stat. 1985, ch. 38, par. 18—2), home invasion (Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)) and residential burglary (Ill. Rev. Stat. 1985, ch. 38, par. 19—3(a)).

The State moved for a death sentencing hearing and the defendant waived his right to be sentenced by a jury. The trial court found the defendant eligible for death under section 9—1(b)(6) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(b)(6)). The court further found that there were no mitigating factors sufficient to preclude a death sentence and sentenced the defendant to death. On direct appeal, this court affirmed the defendant's convictions, but vacated his death sentence, and remanded the cause to the trial court for a new sentencing hearing. (*People v. Simms* (1988), 121 Ill. 2d 259, 276.) On remand, the defendant elected to be resentenced by a jury. At the second capital sentencing hearing, the jury determined that the defendant was eligible for the death penalty and further found that there were no mitigating factors sufficient to preclude a sentence of death. Accordingly, the trial court sentenced the defendant to death. This sentence was stayed (107 Ill. 2d R. 609(a)) pending direct appeal to this court (Ill. Const. 1970, art. VI, §4(b); 107 Ill. 2d R. 603).

The facts underlying the defendants convictions are discussed in detail in the defendant's first direct appeal and will be repeated here only insofar as they are relevant to the sentencing hearing. The victim, Lillian LaCrosse, was murdered on April 17, 1985. The victim's husband, Richard LaCrosse, testified at the sentencing hearing that he and his wife lived in an apartment in Addison, Illinois. On the evening of April 17, 1985, the electricity in the building failed and Commonwealth Edison personnel were working in the area outside of the victim's apartment. When Mr. LaCrosse left the apartment for work at 10 p.m., the apartment building was dark except for dim emergency lights in the hallways. When Mr. LaCrosse returned home at 7:30 a.m. the next morning, he found his wife dead on the dining-room floor, wearing only her shirt. Mr. LaCrosse also testified

that the dresser drawer in the bedroom had been disturbed and that the victim's purse and a movie camera were missing.

The parties stipulated to the testimony of Mary Faille, a nurse who worked in the emergency room of St. Ann's Hospital on April 18, 1985. According to Faille, the defendant was treated in St. Ann's emergency room at 2:20 a.m. on April 18, 1985, for a lacerated right thigh. The defendant told Faille and the doctor who treated him that he had injured himself while cutting potatoes. Because of the nature of the defendant's wound, Ms. Faille notified the Bellwood police department.

Officer Barry Muniz, of the Addison police department, testified that he examined the victim's apartment for evidence following the murder and found no signs of forced entry. Muniz also testified that he found blood in the victim's kitchen, on a dresser in the victim's bedroom, on the rear door of the victim's apartment, in the hallway leading from the victim's apartment building, and on the landing inside the entrance to the apartment building next door, where the defendant resided. Evidence was introduced by way of stipulation that members of the Addison police department executed a search warrant upon the defendant's apartment and found blood on the refrigerator and the bathtub of that apartment.

Officer Gorniak of the Addison police department testified that the defendant was arrested for LaCrosse's murder at 4:30 a.m. on April 19, 1985, and interrogated at the Streamwood police department. According to Gorniak, the defendant was advised of and signed a written waiver of his *Miranda* rights. Gorniak then asked the defendant how he had injured his right thigh and the defendant explained that he had cut himself while peeling potatoes. When Gorniak stated that this explanation

was unlikely, the defendant stated that he had been stabbed during a fight in Chicago, but did not want to tell the police because he had been in the area to buy drugs. Gorniak then informed the defendant that his brother, Sherrod Simms, had told the police that Darryl admitted stabbing the victim. Gorniak also told the defendant that the police had found blood on the back hallway of his building and in his apartment. The defendant responded that he would tell the truth and gave a written statement to the police.

According to the defendant's statement, he left his Addison apartment at approximately 11:30 p.m. on the evening of April 17, after arguing with his girlfriend. Upon exiting the apartment, he saw the Commonwealth Edison crew working in front of the building. The defendant then went to the victim's apartment, allegedly because the victim asked him to come up. The defendant stated that, after the victim let him into her apartment, he fondled her and then went to the kitchen for a cigarette. The victim allegedly became angry when the defendant told her that he could not stay, and stabbed the defendant in the leg with a knife. The defendant then obtained possession of the knife and stabbed the victim in the neck. When the victim began screaming, he choked her until she became unconscious. The defendant claimed that he removed the victim's clothing and wiped her with a towel to remove his fingerprints from her body. The defendant stated that, when he realized that he would go to prison for a long time for attempted murder, he stabbed the victim in the neck and throat more than 10 times, knowing that these wounds would kill her. According to the defendant, the wounds on the victim's chest, back and arms resulted from her "struggling and flopping around on the floor." The defendant stated that he took the victim's purse and movie camera when he left the apartment because he feared he had

left fingerprints on them the previous afternoon. The defendant claimed in the statement that he and the victim were having an affair for approximately one month prior to the murder, and that he had sexual intercourse with the victim in her apartment during the afternoon of April 17. The victim's father, George Spencer, testified that he and his wife were with the victim at her apartment during the afternoon and evening of April 17, 1985, and that the victim had no visitors.

Deputy Stanley Cole, of the Du Page County sheriff's office, testified that, as he was placing the defendant in a holding cell on April 19, 1985, he overheard a conversation between the defendant and another officer. The officer asked the defendant how he got the wound on his leg, and the defendant responded, "I missed her and I got myself."

The parties stipulated to the testimony of Dr. Lawrence Henley, the pathologist who performed the autopsy on the victim. According to Dr. Henley's testimony, the victim was stabbed at least 25 times in the ear, shoulder, throat, chest, arms and back. The victim had also been strangled and the cause of her death was exsanguination, or loss of blood. Photographs depicting the victim's body and bloodstains in her apartment were admitted into evidence.

Christine Sachs, a forensic chemist, testified that the bloodstains found in the victim's apartment were made by type O blood, and that both the victim and the defendant had type O blood. She also testified that a vaginal smear taken from the victim revealed the presence of spermatozoa, and that spermatozoa ordinarily remains detectable in a woman's body for 72 hours. The victim's husband testified that he had not had sexual intercourse with his wife for 1½ or 2 weeks before her death.

The State introduced testimony that the defendant was convicted of intentional murder, knowing murder and several counts of felony murder as a result of Lillian LaCrosse's death. The defendant was also convicted of five counts of aggravated criminal sexual assault, criminal sexual assault, home invasion, armed robbery and residential burglary. The parties stipulated that the defendant was born December 27, 1961. Following closing arguments, the jury returned a general verdict finding that the defendant was eligible for the death penalty, because he was 18 or more years old at the time of the murder and committed the murder in the course of another felony. Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6).

At the second stage of the sentencing hearing, the State introduced testimony showing that the defendant had been adjudicated a delinquent minor in 1975, after he and several classmates started a fire in the elementary school they attended. The defendant was also adjudicated a delinquent minor in 1977, after he committed burglary.

The State also presented evidence of criminal misconduct which the defendant engaged in as an adult. Mary Matas testified that, on March 17, 1985, she entered her automobile, which was parked in a Jewel parking lot. The defendant emerged from the backseat, cut her with a knife or razor blade, beat, raped and robbed her. The defendant then fled the scene. Three weeks later, the defendant accosted her in the garage of her home, stated that he "hadn't gotten enough last time" and began to beat her. The defendant ran away when Matas' daughter turned on the lights of the garage. Sandra Sender testified that the defendant threatened her with a knife, choked her until she was unconscious and then raped her in her home on May 26, 1983. The defendant was convicted of aggravated battery as a result of the incident. Sharon Williams testified that, in August of

1980, the defendant threatened her with a knife and raped her, and was present when one of his friends sexually assaulted her. Daniel Kelly testified that the defendant sprayed him in the face with mace when Kelly interrupted the defendant's attempt to steal an automobile.

The State presented evidence that the defendant pleaded guilty to burglary in 1981 and was sentenced to three years' incarceration. The State also introduced evidence that a stolen sawed-off shotgun was found in the trunk of an automobile the defendant was driving in 1982, and that the defendant was arrested in 1983 for possessing a .357-caliber handgun. Finally, the State introduced testimony that, while awaiting his second capital sentencing hearing in Menard Correctional Center, the defendant had altered a commissary slip and had thrown a bucket of hot water into a correctional officer's face.

In mitigation, the defendant presented the testimony of two inmates incarcerated at Menard, who testified that the correctional officer whom the defendant assaulted had sexually harassed the defendant. The defendant's ex-wife and three of her relatives testified that the defendant was not disciplined or supervised as a youth, that the defendant used large quantities of drugs, and that the defendant was good with children.

The parties stipulated to the facts of a personal injury action which the defendant brought against the City of Chicago and several Chicago police officers. According to the stipulation, the defendant was arrested in 1981, in the course of burglarizing a coin operated laundromat. When the defendant refused to name his accomplices, several police officers chained him to a pole with his hands behind his back. The officers put a plastic bag over his head to persuade him to name his accomplices. When the defendant persisted in his refusal, the police allowed a dog to attack the defendant. The dog ripped

the defendant's pants and lacerated his penis. After the defendant revealed the names of his accomplices, he was taken to Cook County Hospital, where he underwent a partial circumcision and remained for three days. The City of Chicago was found liable in the civil action brought by the defendant.

The parties stipulated to the testimony of Michael Fisher, the attorney who represented the defendant in the civil action. Fisher stated that the defendant stayed in Fisher's apartment for three weeks during the defendant's civil trial in 1984. During that time, Fisher was impressed that the defendant was honest and hard working.

The final defense witness, Mary DeSloover, testified about information she discovered while preparing a presentence report on the defendant. According to DeSloover, the defendant was introverted and exposed to violence at a very early age. DeSloover concluded that the defendant's family was dysfunctional, because his mother was very permissive, while his stepfather occasionally beat the defendant. As a teenager, the defendant became involved in street activity and drugs. The defendant dropped out of high school and baby-sat for his nephew. In 1980, the defendant married. He fathered two children in that relationship, which ended in divorce in 1985. The defendant used and sold illegal drugs.

Following closing arguments by the State and the defendant, the jury concluded that there were no mitigating factors sufficient to preclude a sentence of death. Accordingly, the trial court sentenced the defendant to death and this appeal followed.

I

The defendant first argues that his death sentence must be vacated because the jury returned a general verdict finding him eligible for the death penalty after it

was instructed, *inter alia*, that he was eligible for death if he committed a murder in the course of a residential burglary. He argues that, since residential burglary was not an offense establishing eligibility for a death sentence under section 9—1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6)), the general verdict finding him eligible for the death sentence cannot stand. The State responds that the defendant has waived the error by failing to object to the improper instruction at the sentencing hearing or in his post-sentencing motion.

A defendant is eligible for the death penalty only if the State proves beyond a reasonable doubt that a statutory aggravating factor exists. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(f).) Here, the defendant's eligibility for the death penalty was predicated upon the statutory aggravating factor set out in section 9—1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6)), which authorizes the imposition of the death sentence upon a defendant who commits a murder in the course of another felony. The record reveals that the jury was instructed that it could find that statutory aggravating factor only if the State proved that the defendant actually killed the murdered individual, that the defendant acted with the intent to kill or with knowledge that his acts created a strong probability of death or serious bodily harm, and that "the other felony was one of the following: aggravated criminal sexual assault, home invasion, armed robbery, residential burglary."

The jury instructions were erroneous because residential burglary was not one of the felonies enumerated in section 9—1(b)(6) which could support eligibility for the death penalty at the time of the defendant's sentencing hearing. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6); see also *People v. Chandler* (1989), 129 Ill. 2d 233.) As the State points out, the defendant did not object to the im-

proper instructions at trial or in his post-trial motion. As a general rule, failure to object to an alleged error at trial and in a written post-sentencing motion results in a waiver of that error on appeal. *(People v. Enoch* (1988), 122 Ill. 2d 176, 186.) The defendant concedes his procedural default, but argues that this court should consider his claim under the "plain error" rule.

The plain error rule permits a reviewing court to take notice of errors which were not brought to the attention of the trial court where the evidence is closely balanced or where the nature of the error is such as to deprive the accused of his constitutional right to a fair sentencing hearing. (107 Ill. 2d R. 615(a); *People v. Gacho* (1988), 122 Ill. 2d 221, 239; *People v. Walker* (1985), 109 Ill. 2d 484, 504.) Although the evidence at the defendant's sentencing hearing was not closely balanced, the error in the jury instructions was sufficiently grave as to have deprived the defendant of a fair sentencing hearing. Accordingly, we will regard the challenged jury instructions as plain error. See *People v. Ogunsola* (1981), 87 Ill. 2d 216; *People v. Brownell* (1980), 79 Ill. 2d 508.

Statutory aggravating circumstances define the crimes for which death may be imposed to eliminate standardless sentencing discretion and to ensure that the death penalty is not inflicted arbitrarily and capriciously. *(Godfrey v. Georgia* (1980), 446 U.S. 420, 428, 64 L. Ed. 2d 398, 406, 100 S. Ct. 1759, 1764.) Aggravating circumstances thus perform the constitutionally necessary function of narrowing the class of persons eligible for the death penalty, according to an objective legislative definition. *Lowenfield v. Phelps* (1988), 484 U.S. 231, 244, 98 L. Ed. 2d 568, 581, 108 S. Ct. 546, 554; *Zant v. Stephens* (1983), 462 U.S. 862, 878, 77 L. Ed. 2d 235, 250-51, 103 S. Ct. 2733, 2743.

The State argues that there is "no doubt" that the jury found the defendant eligible for death on the basis

of a valid aggravating circumstance. Yet, the jury was instructed that it could find the defendant eligible for death if the murder occurred in the course of a residential burglary, even though section 9—1(b)(6) did not list residential burglary among those felonies supporting eligibility for the death penalty at the time of the defendant's sentencing hearing. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6); but see Pub. Act 86—1012, eff. July 1, 1990 (amending Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6)(c) to add residential burglary to the enumerated felonies).) The error in the jury instructions was not cured by the jury's verdict, since the jury returned a general verdict finding the defendant eligible for the death sentence. The signed verdict form simply stated that the jury unanimously found that a statutory aggravating factor existed, without specifying which underlying felony or felonies the jury relied upon to establish the defendant's eligibility for death.

The United States Supreme Court has recognized that "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." (*Zant v. Stephens* (1983), 462 U.S. 862, 881, 77 L. Ed. 2d 235, 252, 103 S. Ct. 2733, 2745; accord *Yates v. United States* (1957), 354 U.S. 298, 312, 1 L. Ed. 2d 1356, 1371, 77 S. Ct. 1064, 1073; *Stromberg v. California* (1931), 283 U.S. 359, 367-68, 75 L. Ed. 1117, 1122, 51 S. Ct. 532, 535.) This principle applies here, because the jury's finding that a statutory aggravating factor existed, making the defendant eligible for death, may have rested exclusively on the fact that the murder occurred in the course of a residential burglary, a felony not enumerated in section 9—1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6)). Accordingly, we conclude that the defendant's

death sentence must be vacated. See *People v. Davis* (1983), 97 Ill. 2d 1, 27; *cf. United States v. Alexander* (4th Cir. 1984), 748 F.2d 185, 189-90 (extrinsic factors in the record made it clear that, although the jury could have relied upon an improper ground, it did not, in fact, do so).

The State argues that the defendant's death sentence need not be vacated, because the defendant was not entitled to a new hearing to determine whether he was eligible for the death sentence. The State points out that this court vacated the defendant's first death sentence because victim impact evidence was erroneously introduced at the second stage of the sentencing hearing. (*People v. Simms* (1988), 121 Ill. 2d 259, 276.) The State contends that the defendant was not entitled to have the first phase of the capital sentencing proceeding conducted again, because the victim impact evidence did not taint that phase of the sentencing proceeding. Accordingly, it argues that any errors which occurred at the eligibility phase of the defendant's second capital sentencing hearing may be ignored in this appeal.

We must reject the State's argument for two reasons. First, although this court found errors only at the second stage of the defendant's first death penalty hearing, our opinion expressly reversed the defendant's death sentence and remanded to the circuit court for "a new sentencing hearing." (*People v. Simms* (1988), 121 Ill. 2d 259, 276.) Nothing in the opinion expressly limited the scope of the hearing on remand to the second phase of a capital sentencing hearing. (*Cf. People v. Turner* (1989), 128 Ill. 2d 540, 573 (remanded so that the second phase of the capital sentencing hearing could be conducted anew).) Second, the State chose to proceed with both stages of the sentencing proceeding on remand, and thereby waived its right to claim that the defendant was

only entitled to a have the aggravation and mitigation phase of the sentencing proceeding conducted again.

The defendant claims that a number of other errors occurred at his sentencing hearing. Because we conclude that the defendant's death sentence must be reversed and the cause remanded to the trial court for another sentencing hearing, we address only those allegations of error which are likely to arise again on remand. *People v. Terrell* (1989), 132 Ill. 2d 178, 221; *People v. Wilson* (1987), 116 Ill. 2d 29, 42.

## II

The defendant argues that he was deprived of his right to confront witnesses against him when the trial court permitted a police officer to testify at the first stage of the sentencing hearing that the defendant's brother told the police that the defendant admitted killing the victim. Specifically, Officer Gorniak testified that he informed the defendant that "Sherrod [the defendant's brother] told us that he had a conversation with Darryl and during that conversation Darryl admitted to Sherrod that he had been at the victim's apartment and had stabbed her." The trial court overruled the defendant's objection to Gorniak's testimony, and instructed the jury that the statement was admitted only to show what caused Officer Gorniak to continue questioning the defendant and that it was not to accept the truth of the matter asserted.

The defendant claims that Gorniak's testimony was inadmissible hearsay. To qualify as hearsay, an out-of-court statement must be offered to establish the truth of the matter asserted. (*People v. Rogers* (1980), 81 Ill. 2d 571.) Testimony about an out-of-court statement which is used for a purpose other than to prove the truth of the matter asserted in the statement is not "hearsay." (*People v. Anderson* (1986), 113 Ill. 2d 1; *People v. Stewart*

(1984), 105 Ill. 2d 22; *People v. Silagy* (1984), 101 Ill. 2d 147.) Applying these principles, we must conclude that Gorniak's testimony was not hearsay. The challenged testimony was introduced, not for the truth of what Sherrod Simms said, but to explain to the jury why Officer Gorniak continued to question the defendant after the defendant offered a plausible explanation for the wound on his leg.

This court has held that a police officer may recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact. (*People v. Hayes* (1990), 139 Ill. 2d 89, 130; *People v. Johnson* (1987), 116 Ill. 2d 13, 24; see also *People v. Wilson* (1988), 168 Ill. App. 3d 847, 850-51.) We have also held that a police officer may testify about his conversations with others, such as victims or witnesses, when such testimony is not offered to prove the truth of the matter asserted by the other, but is used to show the investigative steps taken by the officer. Testimony describing the progress of the investigation is admissible even if it suggests that a nontestifying witness implicated the defendant. (*People v. Morgan* (1991), 142 Ill. 2d 410, 447; *People v. Gacho* (1988), 122 Ill. 2d 221, 248-49; *People v. Holman* (1984), 103 Ill. 2d 133, 149.) Gorniak's testimony was admissible to explain why the police continued to question the defendant about the victim's murder. The trial court specifically instructed the jury that the testimony was introduced for the limited purpose of explaining what caused the police to act, and that they were not to accept the truth of Sherrod Simms' statement to the police. We must presume, absent a showing to the contrary, that the jury followed the trial judge's instructions in reaching a verdict. *People v. Harris* (1988), 123 Ill. 2d 113, 134; *People v. Silagy* (1987), 116 Ill. 2d 357, 367.

## III

The defendant next argues that the trial court abused its discretion by permitting the jury to consider, during the first stage of the sentencing hearing, certain photographs of the decedent and of bloodstains throughout her apartment. He contends that the photographs were not relevant to any issue at the first stage of the sentencing hearing. He also contends that any probative value that the photographs may have had was outweighed by their prejudicial effect.

The record reveals that the jury was permitted to view Exhibits 2, 8 and 77. Exhibit 8, photographed at the scene of the crime, depicts the decedent's partially naked body, and stab wounds in the victim's neck and breast. Exhibit 2, also photographed at the scene of the crime, depicts the stab wounds in the decedent's neck. Exhibit 77, photographed during an autopsy, depicts several stab wounds in the decedent's back. The jury also viewed Exhibits 25, 30, 31, 32, 33, 38, 40 and 42, which depict various bloodstains found in the decedent's apartment. The State justifies the admission of the photographs on the ground they tend to show the defendant's intent to kill or his knowledge of a strong probability that his acts would result in death.

The purpose of the first phase of the capital sentencing hearing is to allow the jury to determine the defendant's eligibility for the death penalty. Evidence having a direct bearing on the statutory prerequisites may be admitted at this stage, while unnecessary and inflammatory evidence that could improperly influence the jury must be excluded. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 371.) The decision of whether to admit photographs into evidence is left to the discretion of the trial court, whose decision will not be overturned absent an abuse of discretion. *People v. Lucas* (1989), 132 Ill. 2d 399, 439.

As stated, the State relied upon section 9—1(b)(6) of the Criminal Code (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)(6)) as its basis for invoking the death penalty. In determining whether the defendant was eligible for death under that section, the sentencing jury had to consider whether another felony occurred, whether the murder was committed in the course of another felony, and whether the defendant acted with the mental state required under the statute. The trial court admitted the photographs on the ground that they were relevant to the question of the defendant's intent. The photographs of the victim's wounds are probative of the defendant's mental state, since the sheer number and placement of the wounds depicted suggest that the defendant intended to kill the victim or acted with knowledge of a strong probability that his acts would cause her death. *Cf. People v. Davis* (1983), 97 Ill. 2d 1, 28-29 (photograph of victim slumped over in wheelchair was not probative of the defendant's intent to kill).

The defendant argues, however, that even if the photographs were relevant, they should not have been admitted into evidence because their probative value was outweighed by their prejudicial effect upon the jury. He contends that the photographs were not necessary to prove that the victim's death was the result of an intentional act, because he admitted, in his statement to the police, that he stabbed the victim repeatedly, knowing that the wounds would kill her. The defendant observes that his admission was corroborated by testimony that he was convicted of murder with intent to kill and of murder knowing that his acts created a substantial probability of death or serious bodily harm.

The fact that the photographs were cumulative evidence of the defendant's mental state is not sufficient to bar their admission into evidence. This court has recognized that demonstrative evidence may be clearer and

more persuasive than oral testimony covering exactly the same points and has allowed the jury to view photographs of a crime victim even when the photographs simply depict what witnesses have orally described. (*People v. Henenberg* (1973), 55 Ill. 2d 5, 13-14.) We have also held that photographs of a decedent which are relevant to establish any issue of fact are admissible in spite of the fact that they may be gruesome or inflammatory (*People v. Shum* (1987), 117 Ill. 2d 317, 353-54; *People v. Foster* (1979), 76 Ill. 2d 365, 375-78), and that it is not an abuse of discretion to allow the jury to consider photographs which may be characterized as "disgusting" (*People v. Shum* (1987), 117 Ill. 2d 317, 353, quoting *People v. Lindgren* (1980), 79 Ill. 2d 129, 143). This court has also held that "[t]he major bulwark against prejudicing the jury is the sound discretion of the trial judge." *People v. Foster* (1979), 76 Ill. 2d 365, 378.

Applying these principles, we find that the admission of the photographs was not an abuse of discretion. The cases which the defendant cites are distinguishable. In *People v. Brisbon* (1985), 106 Ill. 2d 342, the defendant stipulated that he was eligible for death, because he murdered an inmate of a correctional institution. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(b)(2).) Despite this stipulation, the State sought to prove that the defendant was also eligible for death under section 9—1(b)(3) of the Criminal Code (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(3)), because he had been convicted of murdering two or more individuals. To establish the defendant's eligibility for death under that section, the State introduced gruesome photographs of two prior murder victims. The *Brisbon* court concluded that the photographs were not relevant to any issue at the first stage of the sentencing hearing and were introduced solely to inflame the jury. (*People v. Brisbon* (1985), 106 Ill. 2d 342, 371-72.) Similarly, in *People v. Davis* (1983), 97 Ill. 2d 1, the State in-

troduced inflammatory photographs of prior murder victims to establish the defendant's eligibility for death under section 9—1(b)(3) (Ill. Rev. Stat. 1981, ch. 38, par. 9—1(b)(3)). The *Davis* court concluded that the photographs had no probative value and were introduced solely to prejudice the jury against the defendant. *People v. Davis* (1983), 97 Ill. 2d 1, 28-29.

The photographs challenged here, on the other hand, were of the victim for whose murder the defendant was being sentenced. While gruesome, the photographs were probative of the defendant's mental state and were not introduced solely to inflame and prejudice the jury against the defendant. Thus, we cannot conclude that the trial court abused its discretion in admitting the photographs into evidence or in permitting the jurors to examine them during the eligibility stage of the sentencing hearing. See *People v. Rogers* (1988), 123 Ill. 2d 487, 516-17.

## IV

The defendant also argues that evidence of criminal misconduct which did not result in conviction should not have been admitted at the second stage of his sentencing hearing. The challenged evidence established that the defendant engaged in eight acts of criminal misconduct, including three sexual assaults, two weapons offenses, one aggravated battery and two offenses (assault and forgery) which occurred while the defendant was incarcerated.

Our death penalty statute permits the introduction of evidence during the second phase of the sentencing hearing which would not ordinarily be admissible during the guilt phase of trial. (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(e).) This court has held that evidence pertaining to a defendant's prior misconduct is admissible, even if the misconduct did not result in prosecution or conviction, if

it is relevant, reliable and subject to cross-examination. (*People v. Johnson* (1989), 128 Ill. 2d 253, 284; *People v. Lego* (1987), 116 Ill. 2d 323, 346; *People v. Sanchez* (1986), 115 Ill. 2d 238, 276.) Under this test, the evidence presented in aggravation against the defendant was admissible.

Evidence that the defendant exhibited violent and criminal behavior prior to murdering Lillian LaCrosse and after he was incarcerated for that crime was relevant, because it bore on the likelihood that the defendant would commit other offenses. The evidence was probative of the defendant's character and aided the jury in determining whether death was the appropriate penalty. *People v. Brisbon* (1985), 106 Ill. 2d 342, 364-65.

The evidence of the defendant's prior criminal behavior was also reliable. Testimony regarding each offense was presented by a witness with firsthand knowledge of the criminal misconduct. The sexual assault victims testified to the circumstances surrounding the assault and positively identified the defendant as the assailant. Their testimony remained unchanged upon cross-examination. Although the defense introduced rebuttal witnesses, who identified minor inconsistencies between each victim's initial complaint and her subsequent trial testimony, the rebuttal witnesses did not undermine the reliability of the victims' testimony. Evidence that the defendant committed aggravated battery was likewise presented by the victim of that battery, whose testimony was corroborated by a police officer who arrested the defendant in connection with the incident. Finally, evidence of the two weapons offenses was presented by the police officers who saw weapons in the defendant's possession. The officers' testimony remained unimpeached on cross-examination. Because the testimony relating to the defendant's prior criminal misconduct was both relevant and reliable, it was admissible at the sentencing hearing.

V

The defendant also argues that the trial court should have instructed the jury that, if not sentenced to death, the defendant would receive either a fixed term of 20 to 80 years' imprisonment or a life sentence with no chance for parole. The trial court refused the defendant's proposed instruction and instead instructed the jury that, if it determined that a death sentence was inappropriate, the court would impose a sentence other than death.

In *People v. Albanese* (1984), 102 Ill. 2d 54, this court held that it is not improper for a trial court to instruct a sentencing jury that the alternative to death is a prison term, without specifying that the term is life imprisonment. (*People v. Albanese* (1984), 102 Ill. 2d 54, 81.) The court explained that the sentencing jury is only responsible for determining whether the death penalty is warranted, not the severity of the prison sentence if the death sentence is found inappropriate. *People v. Albanese* (1984), 102 Ill. 2d 54, 81; see *People v. Stewart* (1984), 105 Ill. 2d 22, 71.

As the defendant points out, this court recognized an exception to this rule in cases where the defendant's eligibility for death is predicated upon multiple murder convictions. (*People v. Gacho* (1988), 122 Ill. 2d 221, 261.) In *Gacho*, we held that, in multiple-murder cases, the trial court should instruct the jury that, if it finds mitigating factors sufficient to preclude imposition of the death penalty, the defendant will be sentenced to natural life imprisonment, and that no person serving a term of natural life imprisonment can be paroled or released, except through executive clemency. *Gacho*, 122 Ill. 2d at 261.

The concerns which prompted the court in *Gacho* to revise the jury instructions, in cases where the death sentence is predicated upon multiple murder convictions,

do not apply in single-murder cases. The *Gacho* court concluded that the standard Illinois pattern jury instruction (IPI) should not be given in multiple-murder cases, because the jury might believe that the defendant could be sentenced to a term of years if not sentenced to death. Such a conclusion would be erroneous, because the only sentencing alternatives for a defendant convicted of multiple murders are death or natural life imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1)(c).) Here, on the other hand, the instruction given accurately informed the jury that the court could sentence the defendant to a term of years if the jury did not impose the death sentence. See Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—1(a)(1), 1005—8—2(a)(1); see also *People v. Bean* (1990), 137 Ill. 2d 65, 116-17; *People v. Turner* (1989), 128 Ill. 2d 540, 574-75.

The defendant argues, however, that informing the jury of the alternative sentences the trial court might impose if the defendant was not sentenced to death would increase the accuracy of the death sentencing hearing. He claims that, without such information, the jurors could have believed that he would be released in a few years if they did not impose the death penalty. As the court pointed out in *People v. Bean* (1990), 137 Ill. 2d 65, 117-18, however, the trial court would have to explain our State's entire determinate sentencing system before the jury would be fully informed about the alternative sentences the defendant could receive if not sentenced to death. The jury could fairly and accurately compare the death sentence to alternative sentences of imprisonment only if it was instructed that the defendant could be released from prison before he served the full sentence imposed, either though executive clemency or by earning good-conduct credits provided for by the rules of the Department of Corrections. (See Ill. Rev. Stat. 1987, ch. 38, par. 1003—6—3; *People v. Bean*

(1990), 137 Ill. 2d 65, 117-18.) We have repeatedly held, however, that it is improper to inform a jury about the possibility that a defendant may be paroled before serving his full sentence. Such information diverts the jury's attention from the character of the offender and the circumstances of his offense and focuses it upon a speculative possibility that may or may not occur. (See *People v. Szabo* (1983), 94 Ill. 2d 327, 366; *People v. Walker* (1982), 91 Ill. 2d 502, 515.) Thus, we continue to adhere to our decisions which hold that it is not error to refuse to instruct the jury of the possible terms of imprisonment which the defendant might receive if not sentenced to death. *People v. Bean* (1990), 137 Ill. 2d 65, 118; *People v. Stewart* (1984), 105 Ill. 2d 22, 71; *People v. Albanese* (1984), 102 Ill. 2d 54, 81.

## VI

The defendant next argues that the trial judge erred in refusing to give a proposed jury instruction which stated: "Under the law you may consider mercy in making your decision." Under our death penalty statute, the sentencing body may consider any mitigating factors which are relevant to the imposition of the death penalty. (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(c).) Although this court has acknowledged that mercy is a relevant mitigating factor (*People v. Holman* (1984), 103 Ill. 2d 133, 170), it has repeatedly rejected claims that the jury must be specifically instructed to consider mercy (see *People v. Flores* (1989), 128 Ill. 2d 66, 101-02; *People v. Sanchez* (1986), 115 Ill. 2d 238, 269; *People v. Stewart* (1984), 104 Ill. 2d 463, 492-93). In *Sanchez*, this court upheld a trial court's refusal to give a "mercy" instruction equivalent to that refused here. Our court held that refusal to give a specific mercy instruction is not error where the defendant is permitted to present any evidence it considers mitigating and the jury is instructed

that it may consider any facts or circumstances that provide reasons for imposing a sentence other than death. We held that, in such circumstances, the jury is free to consider mercy or any other mitigating factor despite the absence of a specific instruction to do so. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 269; see also *California v. Brown* (1987), 479 U.S. 538, 93 L. Ed. 2d 934, 107 S. Ct. 837.) The reasoning in *Sanchez* was proper and is controlling here.

Although the trial court refused to give the defendant's proposed non-IPI "mercy" instruction, it did instruct the jury that mitigating factors included "any other reason supported by the evidence why the defendant should not be sentenced to death." In addition, the defendant was permitted to present evidence of his background in an effort to persuade the jury to exercise mercy. Here, as in *Sanchez*, the refusal to instruct the jury as requested was not error, because the jury was in a position to consider mercy as a mitigating factor, if it chose to do so.

## VII

The defendant also raises a number of constitutional challenges to the death penalty. He first argues that the death penalty act is unconstitutional because, once a statutory aggravating factor is found, the defendant bears the burden of persuading the jury that death should not be imposed. The defendant argues that the statute thereby creates a rebuttable mandatory presumption in favor of a death sentence, which violates the eighth amendment, because death may be imposed without an individualized determination that it is appropriate in a particular case. Our court has considered and rejected this claim. *People v. Fields* (1990), 135 Ill. 2d 18, 75-76; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 444-45.

We have repeatedly stated that neither the State nor the defendant bears the burden of proof at the aggravation and mitigation phase of the death penalty hearing. (*People v. Bean* (1990), 137 Ill. 2d 65, 138-40; *People v. Guest* (1986), 115 Ill. 2d 72, 112; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 446; *People v. Brownell* (1980), 79 Ill. 2d 508, 538.) Rather, the State bears the burden of going forward with factors in aggravation and the defendant has the burden of going forward with evidence of mitigating factors. (*People v. Fields* (1990), 135 Ill. 2d 18, 73; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 445-46.) The sentencing determination is a weighing process in which neither party bears the burden of proof. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 269.) We have also rejected the defendant's claim that the death penalty statute does not allow for an individualized determination that the death sentence is appropriate in a particular instance. The statutory scheme implicitly requires the jury to carefully weigh the aggravating and mitigating factors in order to reach a fair and just result, based on the particular circumstances of the offense and individual characteristics of the defendant. *People v. Walker* (1985), 109 Ill. 2d 484, 508-09; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 445-46; *People v. Brownell* (1980), 79 Ill. 2d 508, 538.

We also reject the defendant's claim that the statute unconstitutionally creates a presumption that death is the appropriate penalty. The sentencing body does not presume that death is appropriate. Rather, the statute requires the State to prove beyond a reasonable doubt that a statutory aggravating factor exists making the defendant eligible for death. The State must then persuade the jury that there are no mitigating factors sufficient to preclude the sentencer from imposing the sentence of death. The defendant may, but need not, attempt to persuade the jury that there are mitigating

factors sufficient to preclude a sentence of death. *People v. Bean* (1990), 137 Ill. 2d 65, 138-40; *People v. Del Vecchio* (1985), 105 Ill. 2d 414, 445-46.

The defendant also contends that the death penalty statute is unconstitutional because it does not provide adequate safeguards to prevent the arbitrary and capricious imposition of the death sentence. The defendant claims that, while various individual features of the death penalty statute have been found constitutional, the cumulative effect of all of these features render the statute unconstitutionally arbitrary and capricious. This argument has been considered and rejected on several occasions (*People v. Morgan* (1990), 142 Ill. 2d 410, 473; *People v. Thomas* (1990), 137 Ill. 2d 500, 549-50; *People v. Phillips* (1989), 127 Ill. 2d 499, 542-43), and the defendant has not presented any persuasive reason to reconsider those decisions.

Although the defendant raises other allegations of error, we need not address them in this appeal, because we find that they are not likely to arise again on remand. For the reasons stated, the defendant's death sentence is vacated and the cause is remanded to the trial court for a new sentencing hearing.

*Sentence vacated;*
*cause remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, dissenting:

I do not agree with the court's conclusion that the defendant's death sentence must be vacated because of instructional error committed during the first stage of the sentencing hearing.

In the case at bar, the defendant's eligibility for the death penalty was premised on the statutory aggravat-

ing circumstance found in section 9—1(b)(6) of the Criminal Code of 1961, murder in the course of a specified felony (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(b)(6)). Without objection, the jurors were told that the death penalty could be imposed if they found that the murder occurred during the commission of certain offenses, including, erroneously, residential burglary. Although burglary was among the felonies then specified in section 9—1(b)(6), residential burglary was not, and the instructions were erroneous to that extent. At the conclusion of the first stage of the sentencing hearing, the jury found the defendant eligible for the death sentence, using a general verdict form to memorialize its finding. The jury subsequently determined that there were no mitigating circumstances sufficient to preclude imposition of that sentence, and the trial judge accordingly sentenced the defendant to death. The defendant argues, and the majority agrees, that the failure of the jury instructions to correctly specify the felonies that would sustain an eligibility determination under section 9—1(b)(6) must nullify the sentence.

The majority acknowledges that the evidence presented below "was not closely balanced." (143 Ill. 2d at 170.) Nonetheless, the court chooses to vacate the defendant's death sentence because, in the majority's view, the gravity of the asserted error denied the defendant a fair sentencing hearing. In support of its holding, the majority invokes the rule that a general verdict resting on alternative grounds, one of which is invalid, may be reversed if the reviewing court cannot determine with sufficient certainty that the jury relied on a valid basis for its decision. (See *Stromberg v. California* (1931), 283 U.S. 359, 75 L. Ed. 1117, 51 S. Ct. 532.) Without inquiring whether an error of that nature may ever be waived, the majority simply assumes that the er-

ror committed in the present case was sufficiently serious that another sentencing hearing is now required.

The defendant did not object to the jury instructions used during the first stage of the sentencing hearing. (*Cf. People v. Chandler* (1989), 129 Ill. 2d 233 (defendant preserved similar error by making timely, appropriate objection).) In other circumstances, an objection to a *Stromberg* defect in jury instructions has been held necessary to preserve the error for purposes of review. (See, *e.g., United States v. Washington* (2d Cir. 1988), 861 F.2d 350, 352-53.) In view of the strong evidence establishing the present defendant's eligibility for the death penalty, I would conclude that the defect in the instructions did not rise to the level of plain error and therefore may be deemed to have been waived.

During the first stage of the sentencing hearing, the jury was fully informed of the offenses committed by the defendant in the present case. The State presented evidence of the defendant's convictions both on multiple counts of felony murder and on the attendant felonies. The additional offenses included aggravated criminal sexual assault, criminal sexual assault, armed robbery, and residential burglary; all but residential burglary would render the defendant eligible for the death penalty under the version of section 9—1(b)(6) at issue here. Certified copies of the defendant's convictions were admitted without objection, and the defendant raised no challenge to that evidence, or to the erroneous jury instructions.

In the present case, the defendant failed completely to call the trial judge's attention to the error in the instructions used at the sentencing hearing. The evidence clearly established the defendant's eligibility for the death penalty pursuant to the same statutory aggravating circumstance on several separate grounds. I would conclude, under the standard for review of constitutional

error (see *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824), that the defect in the jury instructions was harmless beyond a reasonable doubt. See *Clemons v. Mississippi* (1990), 494 U.S. 738, 753-54, 108 L. Ed. 2d 725, 741-42, 110 S. Ct. 1441, 1451.

For the reasons stated, I respectfully dissent.

JUSTICE HEIPLE joins in this dissent.