NOTICE: Under Supreme Court Rule 367 a party has 21 days after the

filing of the opinion to request a rehearing. Also, opinions are

subject to modification, correction or withdrawal at anytime prior

to issuance of the mandate by the Clerk of the Court. Therefore,

because the following slip opinion is being made available prior to

the Court's final action in this matter, it cannot be considered

the final decision of the Court. The official copy of the following

opinion will be published by the Supreme Court's Reporter of

Decisions in the Official Reports advance sheets following final

action by the Court.

                                    

               Docket No. 78406--Agenda 2--November 1996.

        THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. LATASHA

                           PULLIAM, Appellant.

                      Opinion filed April 17, 1997.

                                    

     CHIEF JUSTICE HEIPLE delivered the opinion of the court:

     Defendant, Latasha Pulliam, was indicted on 131 counts of

murder, aggravated criminal sexual assault, aggravated kidnapping,

and aggravated unlawful restraint. She and her codefendant, Dwight

Jordan, were tried simultaneously by separate juries in the circuit

court of Cook County. Defendant's jury convicted her of first

degree murder, two counts of aggravated criminal sexual assault,

and two counts of aggravated kidnapping. The jury determined that

there were no mitigating factors sufficient to preclude imposition

of the death penalty. The trial court sentenced defendant to death

for first degree murder. Additionally, the court sentenced

defendant to three consecutive prison terms of 60 and 30 years for

aggravated criminal sexual assault and 15 years for aggravated

kidnapping. Defendant's death sentence has been stayed pending

direct review by this court. Ill. Const. 1970, art. VI, §4(b); 134

Ill. 2d Rs. 603, 609(a).

     On appeal to this court, defendant argues that the trial court

erred in (1) admitting hearsay; (2) admitting evidence of a book

found in defendant's apartment; (3) allowing testimony concerning

a court-ordered fitness examination at both trial and sentencing;

(4) allowing various items of evidence in aggravation; (5)

preventing a defense witness from testifying; (6) allowing the

State to make improper arguments at sentencing; (7) refusing to

respond to a question from the jury; and (8) imposing an excessive

sentence. Defendant also argues that the death penalty is

unconstitutional for a number of reasons. We affirm defendant's

convictions and sentences.

                                   FACTS

     On March 21, 1991, defendant was arrested for the murder of

six-year-old Shenosha Richards (hereinafter Shenosha). The next

day, defendant spoke to law enforcement officers and signed a

court-reported confession. On appeal, defendant does not challenge

the admissibility of this confession. In the confession, defendant

related the following account of the murder.

     On March 21, defendant was outside on the street when Shenosha

asked to come to her house. Defendant took Shenosha to her third-

floor apartment. Upon entering the apartment, she took Shenosha to

her bedroom, where Dwight Jordan, her boyfriend and codefendant,

was sitting on the bed. She told Shenosha to sit down and watch

television. Defendant then went to the kitchen to use cocaine, and

remained there for half an hour. When she returned to the bedroom,

Shenosha was on the floor crying, with her underwear down to her

knees. Jordan was behind her on the floor, fondling his penis in an

attempt to achieve an erection. Upon failing to do so, he picked up

a white shoe polish bottle and inserted it into Shenosha's rectum.

Shenosha continued crying and asked Jordan to stop, saying that she

would not tell anyone.

     Defendant further confessed that Jordan then told her to get

a hammer. After retrieving the hammer, defendant put saliva on it

and inserted the straight end into Shenosha's vagina. As defendant

did this, Jordan continued inserting the shoe polish bottle in and

out of Shenosha's rectum. Defendant and Jordan continued this

activity for 10 minutes. When they stopped, Shenosha was crying.

Defendant put her hand over Shenosha's mouth, and Shenosha tried to

scream. Defendant then took an electrical cord from a television,

wrapped it around Shenosha's neck, and "started to strangle her."

     Defendant stated that she then took Shenosha to an empty

apartment down the hall, with the electrical cord still wrapped

around her neck. Defendant said that as they entered this

apartment, Shenosha fell onto a board with a nail protruding from

it. Defendant took Shenosha to the kitchen of the apartment where

she started a fire "to scare her." After defendant put the fire

out, Shenosha said that she would not tell anyone, except that she

would have to tell her parents. At that point, defendant pulled the

cord tighter around Shenosha's neck and continued tightening it for

10 minutes. Then, because she heard knocking on the door of her

apartment down the hall, she put Shenosha in a closet in the empty

apartment and threw Shenosha's shoes out the window.

     Defendant said that she looked in the closet a few minutes

later and saw that Shenosha was not breathing. Defendant then took

the hammer that she had used earlier and hit Shenosha on the head

three or four times. Defendant then placed Shenosha in a garbage

can, hit her on the head with a two-by-four, and tried to cover her

up with garbage.

     Defendant said that she gave this statement willingly, fully

aware of her constitutional rights to remain silent and have the

assistance of counsel. Investigators who searched the crime scene

recovered Shenosha's shoes, a hammer, a white shoe polish bottle,

and a triangular piece of wood with a protruding nail.

     At trial, the medical examiner who performed the autopsy on

the victim testified that Shenosha suffered 42 distinct injuries.

She sustained two puncture wounds to her chest which damaged her

lungs and coronary artery. The examiner testified that these wounds

were consistent with being struck by a board with a nail. Shenosha

had six lacerations on her head, three of which penetrated through

to the skull. These injuries were consistent with being hit with a

hammer, or a board such as a two-by-four. She had injuries under

her chin which were consistent with ligature strangulation. She

sustained lacerations to the skin of her anus which were consistent

with a traumatic penetration or sexual assault. Injuries caused by

the penetration were at least eight inches deep, consistent with

the handle of the hammer or the shoe-polish bottle. She also had

lacerations alongside her clitoris and on the lower surface of her

vagina extending to her anus which were consistent with penetration

of the hammer or the shoe-polish bottle.

     In its case in chief, the defense called a psychologist who

had examined defendant in 1994. He testified that defendant has an

IQ of 69 and that he believed her to be mildly mentally retarded.

He further testified that a person with defendant's degree of

mental retardation would be easily influenced by others, would not

anticipate the consequences of her actions, and would have

difficulty predicting the outcome of a situation.

     In rebuttal, the State called a psychologist who had examined

defendant in 1991. He testified that he did not believe defendant

was mentally retarded. He also testified that defendant had

malingered, or faked mental illness, during his examination of her,

and further opined that she likely did so during the 1994

examination as well.

     The jury found defendant guilty of first degree murder (720

ILCS 5/9--1(a)(1) (West 1992)), two counts of aggravated criminal

sexual assault (720 ILCS 5/12--14(a)(2) (West 1992)), and two

counts of aggravated kidnapping (720 ILCS 5/10--2(a)(3) (West

1992)). The jury then found defendant eligible for the death

sentence on two grounds: (1) that she committed the murder in the

course of other felonies, namely, aggravated criminal sexual

assault and aggravated kidnapping (720 ILCS 5/9--1(b)(6) (West

1992)); and (2) that the victim was under the age of 12 and her

death resulted from exceptionally brutal and heinous behavior

indicative of wanton cruelty (720 ILCS 5/9--1(b)(7) (West 1992)).

     At the second stage of the sentencing hearing, the State

offered evidence in aggravation. An employee of the Department of

Children and Family Services testified that defendant frequently

had been placed in state facilities as a youth, but had often run

away. The employee testified that on one occasion, defendant ran

away with another girl who was under state care, and that while the

two were gone, defendant physically forced the girl to submit to

oral, anal, and vaginal sex performed by one of defendant's former

boyfriends. The employee testified that the girl was also forced to

perform oral sex on both defendant and her former boyfriend.

     The State presented evidence that defendant's daughter was

twice hospitalized, once for injuries consistent with physical

abuse, and once for both physical and sexual abuse. The State also

offered evidence that defendant, while incarcerated awaiting trial,

sexually assaulted an inmate. Finally, in order to show defendant's

lack of remorse, the State presented evidence that defendant

described to another inmate in great detail her sexual assault and

murder of Shenosha.

     In mitigation, defendant offered evidence that her parents and

other adults physically and sexually abused her as a child. The

evidence indicated that defendant gave birth to a child when she

was 15 and to another when she was 17, and that the fathers of

these children were two separate boyfriends of defendant's mother.

Defendant also offered evidence that her codefendant, Jordan,

physically abused her. A second defense psychologist testified that

defendant is mildly mentally retarded, with a long history of

alcohol and drug abuse.

     The jury found no mitigating factors sufficient to preclude

imposition of the death sentence. The trial court sentenced

defendant to death.

                                 ANALYSIS

                                   Trial

                                  Hearsay

     Defendant contends that the trial court erred in allowing

testimony concerning certain statements made by various persons

about the crime because the statements were hearsay. An out-of-

court statement is hearsay only if it is offered to establish the

truth of the matter asserted. People v. Simms, 143 Ill. 2d 154, 173

(1991).

     Defendant's first hearsay argument concerns the testimony of

the police officer who apprehended her. This officer testified that

during his pursuit of defendant, numerous bystanders shouted such

things as "There she goes, right there, she's running." The officer

also testified that after he apprehended defendant, members of the

crowd said such things as "They got her, there she is right there,

they got her in the car."

     A police officer may testify about statements made by others,

such as victims or witnesses, when such testimony is not offered to

prove the truth of the matter asserted, but is instead used to show

the investigative steps taken by the officer leading to the

defendant's arrest. Simms, 143 Ill. 2d at 174. We hold that the

statements made by bystanders at the crime scene were not

inadmissible hearsay because they were not offered to prove what

they asserted, i.e., that defendant fled and that she was taken

into police custody. Rather, the statements were offered to explain

the steps taken by the police in investigating the crimes and

apprehending defendant.

     Defendant next argues that the trial testimony of Kenosha,

Shenosha's sister, contained inadmissible hearsay. Kenosha

testified that on the day of the murder, a young girl in the

neighborhood told her that Shenosha had gone to the movies with

Shenosha's aunt. We hold that this statement was not inadmissible

hearsay because it was not offered to prove the truth of the

statement. Shenosha had not gone anywhere with her aunt, but rather

was in defendant's apartment at the time. The statement was offered

to explain why Kenosha continued looking for Shenosha after talking

with the young girl.

     Kenosha also testified that while she was looking for her

sister, she encountered codefendant Jordan, who told her that

defendant "live[s] up there." This statement also was not

inadmissible hearsay, as it was not offered to prove that defendant

in fact lived in the apartment Jordan identified. No one disputed

this fact at trial. The statement was instead offered to explain

why Kenosha and her mother went to defendant's apartment.

     Defendant further contends that some of the testimony given by

Emma Richards, Shenosha's mother, was hearsay. Emma testified that

the night before the murder, Shenosha asked her if she knew Dwight

Jordan's girlfriend. Emma testified that when she answered yes,

Shenosha told her that Jordan's girlfriend had taken her to a park

across the street that day. We reject defendant's contention that

these statements made by the victim were hearsay. The statements

were not offered to prove that defendant took Shenosha to the park,

but were instead offered to explain why Emma and Kenosha sought out

defendant after they discovered that Shenosha was missing.

     Emma also testified that while she was searching for her

daughter, a neighbor, Leslie Moon, told her that no one had left

defendant's apartment recently. We likewise do not believe this

statement was hearsay, because it was offered not to prove that no

one had left the apartment, but rather to show why Kenosha and her

mother went to the apartment a second time.

     Finally, Emma further testified that during her search, Moon

told her that she had observed defendant place something in the

garbage can on the porch of defendant's apartment. We agree with

defendant that the purpose for offering this statement was to

corroborate the State's allegation that defendant placed the

victim's body in the garbage can. The statement was therefore

hearsay, and the trial court erred in admitting it. We do not

believe, however, that this error requires reversal of defendant's

conviction. An error in the admission of evidence is harmless if

properly admitted evidence is so overwhelming that no fair-minded

juror could reasonably have voted to acquit the defendant. People

v. Miller, 173 Ill. 2d 167, 195 (1996). Because the evidence of

defendant's guilt was overwhelming, we hold that the trial court's

error in admitting this statement was harmless.

              Evidence of Book Found in Defendant's Apartment

     At trial, the State was permitted to show the jury the cover

of a book entitled The Force of Sex. A police officer who

investigated the murder testified that he found the book on a

coffee table in defendant's apartment two days after the murder.

The officer testified that he did not notice the book when he

searched the apartment the day after the murder. He testified that

the apartment was not locked between the time of the murder and his

discovery of the book. No testimony was offered concerning the

nature of the book's contents, or about who owned or had read the

book.

     Defendant objected when the State sought to introduce the book

into evidence. Defendant argued that the book's potential for

prejudice outweighed any probative value it might have. Defendant

also contended that there was insufficient evidence linking her to

the book, because there was no testimony that she owned or had read

it, and because the apartment had not been secured between the time

of the murder and the discovery of the book. The trial court ruled

that the cover and title of the book were probative to show the

defendant's state of mind, and overruled defendant's objections.

The jury was allowed to view only the cover of the book and to hear

the testimony of the investigating officer about where and when he

found it.

     Evidentiary rulings are within the sound discretion of the

trial court and will not be disturbed on review unless the court

has abused that discretion. People v. Boclair, 129 Ill. 2d 458, 476

(1989). The general rule is that physical evidence may be admitted

provided there is proof to connect it with the defendant and the

crime. People v. Free, 94 Ill. 2d 378, 415 (1983). Evidence may be

inadmissible, however, if it has little probative value due to its

remoteness, uncertainty or its possibly unfair prejudicial nature.

People v. Enis, 139 Ill. 2d 264, 281 (1990).

     We hold that the trial court erred in admitting the book into

evidence. First, because there was no testimony that defendant

owned or had read the book, or concerning the nature of its

contents, the court had no sound basis for concluding that the book

was relevant to the crimes. Second, the fact that the apartment was

unsecured for two days before the book was found further diminished

the book's relevance to defendant's role in the crimes. Given these

circumstances, the trial court abused its discretion in admitting

the book. Because the properly admitted evidence of defendant's

guilt was so overwhelming, however, we hold that this error was

harmless. Miller, 173 Ill. 2d at 195.

                        Use of Fitness Examination

     Defendant contends that because she did not raise the

affirmative defense of insanity, the trial court erred in allowing

testimony from a state psychologist concerning a 1991 examination

which the court ordered to determine her fitness to stand trial.

See 725 ILCS 5/104--14 (West 1992) (providing that statements made

by a defendant during a court-ordered fitness examination may not

be admitted against the defendant unless she raises the defense of

insanity or the defense of drugged or intoxicated condition). The

psychologist testified that during the 1991 examination, defendant

stated that she heard voices and acted as though she were talking

to an invisible person. The psychologist also testified that

defendant said that she saw crack cocaine all over the floor of the

examining room, and that if she had a pipe, she would pick up the

crack and smoke it. We hold that defendant waived any error in the

admission of this testimony by failing to object when the testimony

was offered at trial. Miller, 173 Ill. 2d at 191.

     Defendant contends, however, that because the trial court's

admission of the testimony concerning the fitness examination was

plain error, her failure to object does not constitute waiver.

Under the plain error doctrine, a reviewing court may consider a

trial error not properly preserved by objection when (1) the

evidence is closely balanced or (2) the error is so fundamental and

of such a magnitude that the defendant was denied her right to a

fair trial. Miller, 173 Ill. 2d at 191-92.

     As noted earlier, the evidence in defendant's case was not

closely balanced. Furthermore, we do not believe that the alleged

error was so fundamental as to deny defendant her right to a fair

trial. Defendant herself injected the issue of mental competence

into the proceedings by arguing that her low IQ and purported

mental retardation absolved her of responsibility for her actions.

See Buchanan v. Kentucky, 483 U.S. 402, 422-23, 97 L. Ed. 2d 336,

355, 107 S. Ct. 2906, 2917-18 (1987) (holding that prosecution may

constitutionally offer evidence from court-ordered fitness

examination when defendant presents psychiatric evidence).

     Defendant alternatively contends that her trial counsel's

failure to object to the testimony concerning the fitness

examination deprived her of the effective assistance of counsel in

violation of the sixth amendment to the United States Constitution.

U.S. Const., amend. VI. In order to prove that counsel's assistance

was unconstitutionally ineffective, a defendant must establish a

reasonable probability that the result of the proceeding would have

been different had counsel not committed the alleged errors. People

v. Albanese, 104 Ill. 2d 504, 525 (1984). In light of the

overwhelming evidence of defendant's guilt, we do not believe that

the jury's verdict would have been different if the court had

excluded the testimony concerning the fitness examination.

     Defendant also contends that the trial court erred in allowing

the psychologist who conducted the 1991 fitness examination to

testify that because of his conclusion that defendant had

malingered, i.e., faked mental illness, during that examination,

she likely did so again during a defense psychologist's subsequent

evaluation of her in 1994. Defendant argues that the state

psychologist's assessment of the 1991 examination was irrelevant to

the defense psychologist's interpretation of the 1994 results.

     Defendant was the first to raise the issue of malingering at

trial, when her psychologist testified on direct examination that

defendant had not malingered during the 1994 evaluation. Only after

this testimony was offered did the State counter with its

psychologist's opinion that defendant had malingered in 1991 and

had continued to do so since. The latitude to be allowed in the

presentation of rebuttal evidence is within the sound discretion of

the trial court. People v. Collins, 106 Ill. 2d 237, 269 (1985).

Because defendant initially raised the issue of malingering, we do

not believe the trial court erred in allowing the State to rebut

defendant's arguments on this point.

                                Sentencing

                        Use of Fitness Examination

     Defendant contends that testimony concerning the 1991 fitness

examination was also improperly admitted during the sentencing

phase of trial. At the sentencing hearing, the psychologist who

conducted the 1991 examination repeated the testimony he had given

earlier at trial. In addition, he further testified that defendant

suffered from poly-substance abuse, borderline intellectual

functioning, antisocial personality disorder, and sexual sadism. He

testified that persons who suffer from sadism enjoy tormenting

their victims.

     As with the evidence of the fitness examination offered during

the first phase of trial, we hold that defendant waived any error

in the admission of this evidence at sentencing by failing to

object contemporaneously when it was offered. Miller, 173 Ill. 2d

at 191. We also reject defendant's argument that the admission of

this evidence at sentencing was plain error. The evidence of

defendant's guilt was overwhelming and there was a substantial

amount of evidence in aggravation. In addition, because defendant

was the first to introduce psychiatric evidence, admission of

testimony concerning the fitness examination did not deprive her of

a fundamental right. Buchanan, 483 U.S. at 422-23, 97 L. Ed. 2d at

355, 107 S. Ct. at 2917-18. Furthermore, we hold that defense

counsel's failure to object to the admission of this evidence at

sentencing did not violate defendant's sixth amendment right to the

effective assistance of counsel because, in light of the evidence

against her, defendant failed to establish a reasonable probability

that the jury's verdict would have been different absent counsel's

alleged error. Albanese, 104 Ill. 2d at 525.

     Defendant also contends that the psychologist's testimony at

sentencing about sexual sadism improperly converted the mitigating

factor of mental illness into an aggravating factor. See Zant v.

Stephens, 462 U.S. 862, 885, 77 L. Ed. 2d 235, 255, 103 S. Ct.

2733, 2747 (1983) (holding that certain factors may not

constitutionally be labeled as aggravating). Once again, we hold

that defendant waived this alleged error by failing to object.

     Defendant further contends that the trial court improperly

admitted testimony by the psychologist that defendant was sane.

Defendant asserts that sanity cannot be an aggravating factor

because it applies to every defendant eligible for the death

penalty. See Arave v. Creech, 507 U.S. 463, 474, 123 L. Ed. 2d 188,

200-01, 113 S. Ct. 1534, 1542-43 (1993) (holding that if an

aggravating circumstance applies to every defendant eligible for

the death penalty, the circumstance is constitutionally infirm). We

reject defendant's challenge to this testimony. The State did not

affirmatively attempt to use defendant's sanity as an aggravating

factor, but rather mentioned it solely to rebut defendant's

argument in mitigation that the jury should refrain from imposing

the death penalty due to defendant's purported mental illness.

                          Evidence in Aggravation

     Defendant contends that the trial court erred in admitting

testimony of a fellow inmate in aggravation. First, defendant

argues that the testimony was irrelevant and prejudicial. The

inmate testified that defendant confessed to committing the sexual

assault and murder at issue in the instant case. The inmate also

related specific details of the crimes as told to her by defendant.

Defendant argues that in eliciting this testimony, the State was

improperly relitigating defendant's guilt. We disagree. Evidence

concerning a defendant's role and participation in the commission

of an offense is admissible at sentencing to establish defendant's

character. People v. Turner, 156 Ill. 2d 354, 368 (1993).

     The inmate also testified that defendant had stated she could

avoid going to prison for the assault and murder by pleading

insanity. Defendant argues that the prejudicial nature of this

testimony outweighed its probative value. We hold that this

testimony was properly admitted at sentencing to show defendant's

lack of remorse for her crimes. People v. Barrow, 133 Ill. 2d 226,

281 (1989).

     Second, defendant contends that the trial court improperly

admitted evidence that she took her infant daughter to the hospital

in 1989. The examining doctor testified that the infant had a

severe second-degree burn in a clearly demarcated line around her

buttocks. The doctor testified that he believed the burn was caused

by someone intentionally dipping the child into scalding water,

because there were no burns or splash marks on any other part of

her body. Defendant argues that because it is plausible that her

daughter was burned accidentally, the doctor's testimony was unduly

prejudicial. We disagree. Given the State's presentation of

extensive additional evidence that defendant had a history of

sexually and physically abusing her daughter, the testimony

concerning the burn injury was admissible.

     Third, defendant contends that the trial court erred in

admitting evidence that she allegedly sexually assaulted another

inmate while incarcerated awaiting trial. A prison guard testified

that one morning, several inmates told her that defendant had

sexually assaulted an inmate. The guard testified that when she

asked the alleged victim if defendant had assaulted her, the inmate

nodded slightly, but would not say anything out loud. The guard

testified that the alleged victim had marks on her neck, face and

arm, and seemed frightened of defendant. The guard further

testified that no report was filed about the incident because the

alleged victim refused to talk about it.

     Defendant argues that this testimony was inadmissible because

it was not corroborated by a prison disciplinary report. Evidence

is admissible at the aggravation/mitigation phase of a sentencing

hearing, however, as long as it is relevant and reliable. People v.

Free, 94 Ill. 2d 378, 422 (1983). This determination lies within

the discretion of the trial judge. People v. Eddmonds, 101 Ill. 2d

44, 65 (1984). Because the allegations that defendant perpetrated

a sexual assault were corroborated by the guard's testimony that

the alleged victim was visibly injured and frightened after the

incident, we hold that the trial court did not abuse its discretion

in admitting this testimony.

     Defendant also argues that the guard improperly testified as

to the race of the incarcerated sexual assault victim, describing

her as "a real petite little white girl." Because this reference

consisted of a single, isolated statement, we hold that it was not

intended to incite racial prejudice, and did not in fact have such

an effect. People v. Thomas, 137 Ill. 2d 500, 543 (1990). The jury

was repeatedly instructed that it was not to be influenced by any

person's race, and we find no error in the court's handling of this

testimony.

           Exclusion of Testimony Concerning Mental Disabilities

     Defendant contends that the trial court erred in refusing to

allow a witness to testify regarding the difficulties faced by

mentally handicapped people. The offered witness was a member of

the Illinois Human Rights Commission at the time of trial, and had

previously served as chair of the Advisory Council for the

Education of Handicapped Children of the Illinois State Board of

Education. In an offer of proof, she testified that mentally

handicapped people have a difficult time learning. She also

testified that mentally handicapped parents need support because

they have trouble performing basic parenting skills. On cross-

examination, she conceded that she was not acquainted with

defendant's case.

     The trial court refused to allow the witness to testify before

the jury. Defendant argues that this was error because the evidence

the witness would have offered was relevant to mitigation. The

determination of relevance lies within the discretion of the trial

judge. Eddmonds, 101 Ill. 2d at 65. When the witness was introduced

to the court, the defense conceded that it had already presented

expert testimony substantially similar to the testimony it desired

the witness to offer. The defense also conceded that the witness

would not be offering expert testimony. The witness admitted that

she did not know defendant and had not reviewed her medical

history. Finally, the defense failed to notify the court or the

State that it would offer the witness until the moment it did so.

Given the above factors, as well as the trial judge's observation

that there was a significant dispute over whether defendant was in

fact mentally retarded, we hold that the trial court did not abuse

its discretion in refusing to allow the witness to testify.

                  State's Closing Argument at Sentencing

     Defendant contends that the trial court erred in allowing the

State to make various arguments to the jury at the conclusion of

the sentencing phase of trial. Specifically, defendant asserts that

the State improperly argued that there was no excuse for

defendant's crimes, that defense counsel was trying to make the

jury feel guilty, that the evidence clearly established defendant's

guilt, and that defendant's daughter was a "cocaine baby."

     We hold that defendant waived these issues by failing to

object contemporaneously when the arguments were made. People v.

Miller, 173 Ill. 2d 167, 191 (1996). Furthermore, because the

evidence in this case was not closely balanced, and because the

State's arguments did not deny defendant a fair trial, we will not

address these issues under the plain error doctrine. Miller, 173

Ill. 2d at 191-92.

                 Court's Response to Question from Jurors

     Defendant contends that the trial court erred in responding to

a note the jury sent to the judge during its deliberations on

defendant's sentence. The note consisted of the following question:

"What happens if we cannot reach a unanimous decision on either

verdict?" Defendant moved that the court respond to this inquiry by

giving the jury the following instruction: "According to the law,

if you are not unanimous, you are to sign the verdict that says you

are not unanimous and it is a no death verdict." The court

overruled this motion, and instead instructed the jury in writing

as follows: "You have your instructions. Keep deliberating."

     The general rule is that the trial court has a duty to provide

instructions to the jury where it has posed an explicit question or

requested clarification on a point of law arising from facts about

which there is doubt or confusion. People v. Childs, 159 Ill. 2d

217, 228-29 (1994). A trial court may, however, exercise its

discretion and properly decline to answer a jury's inquiries where

the instructions are readily understandable and sufficiently

explain the relevant law; where further instructions would serve no

useful purpose or would potentially mislead the jury; when the

jury's inquiry involves a question of fact; or if providing an

answer would cause the court to express an opinion which would

likely direct a verdict one way or another. Childs, 159 Ill. 2d at

228.

     We believe that the trial court properly exercised its

discretion in refusing defendant's requested instruction and in

directing the jury to continue deliberating. Immediately before

beginning its deliberations on defendant's sentence, the jury was

instructed as follows: "You may not sign a verdict imposing a death

sentence unless you unanimously vote for it." Because the

instructions given to the jury concerning unanimity were readily

understandable and sufficiently explained the relevant law, we hold

that the court did not err in the manner in which it responded to

the jury's inquiry.

                        Excessiveness of Punishment

     Defendant contends that the death sentence imposed by the jury

is excessive when juxtaposed with the evidence in mitigation.

Defendant presented evidence that she was physically and sexually

abused by her alcoholic mother, sexually abused by her mother's

boyfriends, and physically abused by her boyfriend/codefendant. She

also offered evidence that she was depressed and had received

psychiatric treatment, and that she suffers from an antisocial

personality disorder. She asserts that her low IQ qualifies her as

mildly mentally retarded and that this factor alone should preclude

the imposition of the death penalty.

     A capital sentencing jury's decision will not be lightly

overturned, particularly where it is amply supported by the record.

People v. Johnson, 146 Ill. 2d 109, 145 (1991). Mitigation evidence

of a defendant's cognitive abilities and mental health does not

preclude imposition of a death sentence when that evidence is

outweighed by aggravating evidence. People v. Wilson, 164 Ill. 2d

436, 460 (1994). Likewise, evidence that a defendant has been

physically or sexually abused or is an alcohol and drug abuser does

not invalidate a death sentence when outweighed by aggravating

evidence. People v. Taylor, 166 Ill. 2d 414 (1995).

     Here, defendant confessed to a brutal rape, torture, and

murder of a six-year-old girl. An expert attributed the victim's

death to 42 distinct injuries arising from a combination of

strangulation, puncture wounds to the chest, and blunt head trauma.

In addition, the State offered evidence in aggravation that

defendant had previously assisted in raping one of her friends,

that she had sexually and physically abused her child, and that she

had sexually assaulted a fellow inmate. Considering all of this

evidence, we cannot say that the jury was required to find that the

mitigation evidence precluded imposition of the death penalty. See

People v. Johnson, 146 Ill. 2d 109, 145 (1991).

                    Constitutionality of Death Penalty

     Defendant contends that the trial court's imposition of the

death penalty is unconstitutional on several grounds. First, she

argues that section 9--1(b)(7) of the Criminal Code (720 ILCS 5/9--

1(b)(7) (West 1992)) is facially vague. This section permits the

jury to impose a death sentence if the victim was under 12 years of

age and the death resulted from exceptionally brutal or heinous

behavior indicative of wanton cruelty. We have previously rejected

this argument, and we decline to reconsider that holding. People v.

Odle, 128 Ill. 2d 111, 140 (1988).

     Defendant also contends that the Illinois Pattern Jury

Instructions given at both stages of her sentencing hearing

unconstitutionally failed to guide the jury's discretion. See Free

v. Peters, 806 F. Supp. 705 (N.D. Ill. 1992), aff'd in part and

rev'd in part, 12 F.3d 700 (7th Cir. 1993). We have likewise

rejected this argument and refuse to reconsider our holding. People

v. Williams, 161 Ill. 2d 1, 59 (1994).

     Defendant next argues that section 9--1(g) of the Criminal

Code (720 ILCS 5/9--1(g) (West 1992)) is unconstitutional because

it places the burden on a criminal defendant to establish that a

sentence other than death should be imposed and thereby precludes

meaningful consideration of mitigation evidence. We reject this

argument, as we have done in the past. People v. Miller, 173 Ill.

2d 167, 200 (1996). In a related argument, defendant asserts that

sections 9--1(c) and (e) are unconstitutionally vague because they

allow the jury to consider aggravating factors other than those

enumerated in the statute. We also adhere to precedent in rejecting

this contention. Miller, 173 Ill. 2d at 200.

     Finally, defendant argues that the death penalty statute as a

whole is unconstitutional because it results in arbitrarily or

capriciously imposed death sentences. We decline to reconsider our

previous rejection of this argument. Miller, 173 Ill. 2d at 201.

                                CONCLUSION

     For the reasons stated, defendant's convictions and sentences

are affirmed. The clerk of this court is directed to enter an order

setting Wednesday, September 10, 1997, as the date on which the

sentence of death is to be imposed. Defendant shall be executed in

the manner provided by law. 725 ILCS 5/119--5 (West 1994). The

clerk shall send a certified copy of the mandate in this case to

the Director of Corrections, the warden of Stateville Correctional

Center, and the warden of the institution where defendant is now

confined.

                                                                  Affirmed.

     JUSTICE HARRISON, dissenting:

     The trial court should not have admitted testimony from the

state psychologist concerning statements made by defendant during

a 1991 court-ordered examination to determine her fitness to stand

trial. The statements made by defendant during the fitness

examination fell squarely within the terms of section 104--14 of

the Code of Criminal Procedure of 1963 (725 ILCS 5/104--14 (West

1992)), and their admission was specifically prohibited.

     Although trial counsel failed to make the appropriate

objections to the psychologist's testimony, admission of that

testimony denied defendant her right to a fair trial and

constituted plain error. The majority invokes Buchanan v. Kentucky,

483 U.S. 402, 97 L. Ed. 2d 336, 107 S. Ct. 2906 (1987), to avoid

this conclusion, but nothing in Buchanan legitimizes the

introduction at trial and sentencing of statements made by a

defendant during a court-ordered fitness hearing where, as here, a

statute expressly prohibits their use.

     The due process clause of the fourteenth amendment (U.S.

Const., amend. XIV) prohibits the prosecution of a person who is

unfit to stand trial. People v. Brandon, 162 Ill. 2d 450, 455

(1994). The legislature has enacted a detailed statutory scheme to

ensure that that prohibition is honored, and section 104--14 of the

Code of Criminal Procedure is an integral part of that scheme. In

ruling as it has, the majority has rendered section 104--14 a

nullity. By so doing, it has taken something that was intended to

protect the integrity of the criminal process and subverted it into

a trap for defendants who may be suffering from mental or

psychological impairments. 

     From this day forward, any defendant who cooperates with a

court-ordered fitness hearing does so at his own peril. Under the

majority's analysis, trial courts will be free to disregard the

terms of section 104--14 without risk of reversal, even where a

timely objection is made, just as long as there is enough other

evidence to support a conviction. For my colleagues, it is simply

a question of the ends justifying the means. In my view, the

concept of a fair trial involves considerably more than that.

     I would reverse and remand for a new trial. Accordingly, I

dissent.