THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REGINALD WARD, Defendant-Appellant.

First District (3rd Division)    No. 1—95—1422

Opinion filed December 4, 1998.

864

Mark W. Solock and Barry A. Spector, both of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Rocell J. Winters, Assistant State's Attorneys, of counsel), for the People.

JUSTICE BURKE delivered the opinion of the court:

Following a jury trial, defendant Reginald Ward was found guilty of possession of a controlled substance with intent to deliver and sentenced to 16 years' imprisonment. On appeal, defendant contends that the trial court erred in (1) failing to suppress the introduction into evidence of his State of Illinois identification card (ID card); (2) failing to grant him a continuance to prepare for an evidentiary hearing on a motion to suppress the ID card; and (3) allowing a police officer to testify that he ran a check on defendant's ID card and a positive result came back from the check, which all resulted in depriving defendant of a fair trial. For the reasons set forth below, we affirm.

Prior to defendant's trial, defendant filed a motion *in limine* to bar the State from introducing any evidence of contraband found within the house where the police subsequently discovered defendant lived, which the trial court granted. At this time, the State informed the trial court and defendant that the officers had viewed photographs of defendant inside the house and that is how they had originally identified him. Defendant's counsel inquired whether any of the photographs were inventoried or any report made relating to the photographs that had not been disclosed. The State responded that everything had been disclosed. The trial court ruled, "Picture goes in. *** But the drugs and guns don't go in." The trial court then proceeded with jury selection.

The following day, the issue of suppressing evidence recovered from the house arose again when the parties informed the trial court that at 9:23 p.m. the night before, the State had discovered defendant's ID card in an inventory. It had been inventoried in conjunction with another case, of another defendant, that arose out of related incidents. Defendant also presented another motion *in limine* to bar the State from introducing testimony of a conversation between Yolanda McGee and the police officers investigating the ownership of a Buick they had stopped. McGee had answered the door after the police discovered the Buick they had pulled over was registered to the house in which she lived. The police asked McGee who was driving the vehicle and she answered that "Reginald Ward" was. The trial court ruled that this conversation was inadmissible because it was more prejudicial than probative. Defendant then sought to bar the introduction of the ID card because it was illegally obtained or, in the alternative, as a sanction for failing to produce the card in discovery. The trial court ruled that the ID card was not subject to suppression as hearsay because the officers in the course of their investigation came across the ID card, which had a picture of defendant and his name on it. As to barring the admission of the document as a sanction for failing to disclose it, the trial court ruled:

"[A]s to the photograph, I will deny the motion in limine. I will allow the state to use the photograph on the standard that it was tendered to counsel—counsel was given that last night, informed of that last night as soon as the state found out about it. It's one of those things which goes to—which was filed in another case, *** it came to attention last night, upon finding out about it they notified defense counsel. I think in balancing the statement and the pictures to entitle defendant a fair trial and to allow [sic] state to present their evidence, that being the conduct of the police officers, I think that balancing all the factors that is the appropriate ruling. *** [The] state can introduce the evidence of observing the photographs of the defendant and introduce the I.D. that was recovered in the house."

After the trial court denied the motion *in limine*, defendant asked for a continuance to "investigate the fact they got the photograph and also to make an oral motion to quash arrest and suppress evidence." Defendant requested a continuance to locate a witness he felt necessary for an evidentiary hearing on the suppression of the ID card. Defendant's counsel stated that he was not aware whether defendant lived at the house where the ID card was discovered by the police. The trial court then initially questioned whether defendant had standing to challenge the seizure of the ID card. The trial court ultimately ruled:

"I'm going to deny your motion. I find that the photograph is not evidence of defendant's guilt. I'm allowing it in only for the purposes of showing the police officers' conduct. I'm allowing it in because I have granted the motion in limine barring the statement of Yolanda McGee. All this evidence we're talking about, the statement of Yolanda McGee and the photographs do not go to the issue of whether the defendant possessed drugs, the allegations in the indictment, they only go to show the course of conduct of the police officers. I'm leaving that in for that limited purpose, not as evidence against the defendant.

For those reasons your request to ask that a motion to exclude, a motion to suppress, is denied. Your objection to the introduction of that evidence is denied."

At defendant's trial, the State's evidence consisted of the testimony of two Chicago police officers and the stipulated testimony of a chemist and an expert on narcotics value. Officer Mike Jedlowski testified that on June 18, 1994, he and his partner were assigned to the special operations section of the Chicago police department. Special operations is a unit that patrols different areas of the city designated as high crime areas. On June 18, he was on patrol with his partner, Officer Walter Muszynski, when he observed a Buick exit an alley near

St. Louis and Augusta in Chicago without stopping. Officer Jedlowski was the passenger in an unmarked squad car. He and his partner proceeded to activate their vehicle's emergency equipment to curb the Buick. The Buick stopped at approximately 949 North Drake. After stopping their vehicle, Officer Jedlowski and his partner exited their vehicle and the driver of the Buick exited his vehicle. At this time, Jedlowski heard the driver of the Buick ask, "Why are you stopping me? I didn't do nothing." The driver of the Buick was approximately 10 feet from Jedlowski at this time. The weather was bright and sunny, and Jedlowski testified he had a clear view of the driver. Jedlowski identified the driver of the Buick as defendant. Jedlowski further stated that after defendant asked why he had been pulled over, defendant turned around and ran. After defendant ran, Jedlowski pursued him south on Drake and then west through some gangways. Jedlowski was unable to locate defendant and returned to where defendant had abandoned the Buick. Jedlowski looked inside the driver's door and observed "on the floor of the vehicle on the right side *** a brown paper bag was open." Inside the bag, he could "see two large clear plastic bags with white rock suspect cocaine and bunches of U.S.C. that were rubber banded or tied together." Jedlowski recovered the bag and placed it in the trunk of his police vehicle.

Jedlowski further testified that at this time he and his partner called in the Buick's license plate to receive registration information. The information disclosed that the car was registered to an individual with an address of 946 North Drake. The officers proceeded to that address and knocked on the door. A female answered the door and identified herself as Yolanda McGee. McGee allowed the officers into the home, and after they asked her, "Do you know whose car this is? The car registers here," McGee directed the officers to a basement bedroom. In the basement, Jedlowski observed a collage of pictures on the wall. Within the pictures, Jedlowski recognized defendant. In addition to the photographs on the wall, Jedlowski recovered defendant's ID card with his photograph and name. Approximately 10 minutes had passed from the time defendant ran from Jedlowski to the time Jedlowski saw defendant's picture in the house.

After recovering the ID card, the officers returned to the police station, where they inventoried the cocaine and bag. Officer Jedlowski then began the paperwork associated with the case and ran a check on defendant using the ID card. With respect to the check on defendant's ID card, the following colloquy occurred:

"Q. [MR. GEBHARDT, Assistant State's Attorney] As part of the paperwork, in doing your paperwork did you do anything to find the defendant, Reginald Ward?

A. [OFFICER JEDLOWSKI] We ran a check on the defendant.
Q. And did you get a result of that check?
MR. SPECTOR [defendant's attorney]: Objection.
THE COURT: Read back that question.
(The record was read back by the court reporter as requested.)
THE COURT: Overruled.
BY MR. GEBHARDT:
Q. Your answer to that question was yes, is that correct?
A. Yes.
Q. You got a result of the check that was made?
A. Yes."

Jedlowski further stated that after receiving the ID check information, he took the information downtown to get an arrest warrant.

On June 20, after securing an arrest warrant, Officer Jedlowski went back to 946 North Drake to try and serve the warrant. At that time, he spoke with Dorothy Esco and informed her that an arrest warrant was out for defendant. Jedlowski and Muszynski went to 5430 West Monroe, which was defendant's mother's home, and the address on the ID card Jedlowski had recovered from the North Drake house on June 18. Jedlowski further stated that he advised defendant's mother of the arrest warrant. On June 29, defendant entered Area 4 police headquarters and surrendered himself. Jedlowski then identified several State exhibits, including the cocaine and ID card.

On cross-examination, Jedlowski testified that defendant turned himself in as soon as possible the next time the officers were on duty. Defendant's counsel attempted to impeach Jedlowski by showing that Jedlowski had testified before the grand jury that the events on June 18 occurred at 12 p.m., as opposed to 12:30 p.m., as he had testified to on direct examination. In addition, Jedlowski had issued traffic citations to defendant for failing to have state license plates when, in fact, he had admitted that the plates were merely expired. The time on the traffic citations stated the violations occurred at 12:50 p.m., as opposed to the 12:30 p.m. Jedlowski had testified to on direct examination or the 12 p.m. he had testified to before the grand jury. He also issued a violation to defendant for failing to yield the right of way on a through street even though he had stated that there were no other vehicles except his police vehicle, which was approximately a quarter of a block away from defendant's Buick. Jedlowski further stated that defendant did not cut off or fail to yield to his vehicle. Jedlowski had also stated that he only saw defendant's face for a second or two while defendant took a step or two toward him and before defendant turned and ran in the opposite direction. However, in his police report, Jedlowski did not mention that defendant ever walked toward him. Jed-

lowski also testified that the bag with the cocaine "was on the floor by the front seat," but previously he had testified that the bag was "in the front seat." Further, even though Jedlowski stated that the identification of an offender is an important part of an investigation, he did not mention the existence of the photographs or ID in his police report. In the inventory list for defendant's case, the ID card did not appear, which Jedlowski explained as a clerical error because an inventory number was voided.

On redirect, Officer Jedlowski testified that all the times on the traffic citations and reports were approximate times. He stated that police reports are not meant as a complete record of every event, but a summary. According to Jedlowski, the collage of pictures from which he initially identified defendant consisted of 25 to 30 photographs. He did not inventory any of the pictures because he had already identified defendant and he had the ID card, which he was going to inventory.

Officer Walter Muszynski testified to many of the same events as had Jedlowski, with a few exceptions. He testified that he was driving the police vehicle on June 18 and that when defendant exited the alley, he had to slam on the brakes to avoid a collision. After defendant exited his vehicle and asked why he was being stopped, Officer Muszynski explained that if defendant would come to the back of the Buick he would explain. Defendant then began running, and Muszynski started to give chase but quickly abandoned it after remembering both vehicles were left unattended on Drake. After returning to the vehicles, Muszynski checked the Buick for signs that it was stolen and then ran a short distance down the block to see if he could tell where Jedlowski had chased defendant. Muszynski then ran the Buick's registration number, gave a description of defendant, and called for assistance. Muszynski described defendant as "a male black subject, he appeared to be 18, 19 years old, *** black shorts, black shirt." Approximately a minute or a minute and one-half later, Jedlowski returned. At that time, Muszynski informed Jedlowski that he had run the registration. Muszynski then observed Jedlowski reach inside the Buick and pull out a brown bag, which was subsequently identified as containing cocaine and currency.

After the check revealed that the registration indicated the 946 North Drake address, Jedlowski and Muszynski went to the house and spoke with McGee, who allowed them entry. Muszynski further stated that Jedlowski went into the basement alone while he stayed with McGee. Jedlowski was downstairs for less than a minute. At this time, Muszynski saw a board with many pictures on it from which he recognized a male in some of them as defendant. He then saw the ID card with a picture that he recognized as defendant.

On cross-examination, Officer Muszynski reiterated that he had to hit his brakes to avoid striking defendant's vehicle and estimated the distance between the two vehicles as a couple of car lengths. Muszynski admitted that although he testified on direct examination that he summoned defendant to the rear of the Buick to explain why he stopped defendant, he did not include those facts in his report. Muszynski also admitted that the report did not mention that defendant ever walked toward the officers. Although Muszynski looked inside the vehicle to check for signs it was stolen, by looking at the steering column, he did not notice the bag near the front passenger seat. There was a period of time after the first radio transmission and the discovery of narcotics until the next transmission when Muszynski informed the dispatcher that the investigation was a narcotics investigation. On redirect, Muszynski explained that during this period he was speaking with assisting officers who had arrived and had spoken with his partner, secured the narcotics and currency in his vehicle, and recovered evidence from the 946 North Drake house.

The State next presented the stipulated testimony of a chemist that established the white rock substances recovered from the Buick were in fact 232.14 grams of cocaine. The State also presented the stipulated testimony of another police officer, who was an expert on the street value of narcotics. The expert calculated the value of the cocaine recovered to be between $12,000 and $24,000 and, based on the amount of the narcotics, they were for distribution, not personal use.

After closing arguments, the jury retired and returned a verdict of guilty. The trial court, after conducting a Rule 402 (134 Ill. 2d R. 402) conference and denying defendant's motion for a new trial, sentenced defendant to 16 years' imprisonment for possession of a controlled substance with intent to deliver. The reason for the Rule 402 conference was that defendant had accumulated at least three other charges while out on bond and through a plea agreement pled guilty to two more counts of possession of a controlled substance with intent to deliver for which he received six years' imprisonment for each count, to run consecutively, and the State nol prossed an unlawful weapons charge. In total, defendant was sentenced to 28 years' imprisonment. On appeal, defendant seeks review of only the first possession of a controlled substance charge.

Defendant argues that the trial court erred in ruling that he was "not entitled to attempt to suppress the State of Illinois identification card and the illegal fruits of the State of Illinois identification card." In resolving this issue, it is necessary to determine: whether (1) defendant had standing to contest the search; (2) defendant waived the is-

sue of McGee's consent to the search by failing to raise it in the trial court; (3) McGee could consent to the search under the theory of joint or common authority; (4) it was reasonable for the police to rely on McGee's apparent authority to consent if, in fact, she lacked actual authority; (5) defendant was entitled to an evidentiary hearing on his motion to suppress; and (6) if defendant was entitled to a hearing, the failure of the trial court to grant a hearing mandates reversal.

■ The relevant factors in determining whether a defendant has standing to challenge the seizure of evidence are "his possessory interest in the area or property seized; prior use of the area searched or property seized; ability to control or exclude others' use of the property; and a subjective expectation of privacy." *People v. Delgado*, 231 Ill. App. 3d 117, 119, 596 N.E.2d 149 (1992). Here, the trial court denied defendant's oral motion to suppress and exclude the ID card after a brief argument before opening statements. The trial court received no evidence regarding the search and seizure of the ID card and heard no testimony from witnesses concerning the officers' authority to search the house. The thrust of defendant's arguments in his oral motion to quash arrest and suppress the evidence is unclear. It appears from the record that defendant requested a continuance in order to bring McGee in to testify, presumably to the alleged consent she gave to search, whether the consent was voluntary, and the scope of the consent. The State represented to the trial court that a similar motion had been presented in a related case dealing with the same house and McGee. According to the State, "what actually came out was that the officers were given consent to go into the house, into the [defendant's] bedroom, which is also Yolanda's McGee's bedroom and that the items in that bedroom were properly viewed by the officers. They were in a place they had a right to be because they had consent." Immediately after this representation, the trial court denied defendant's motion but granted him leave to file a written motion to suppress, which defendant did the following day, arguing that the search and seizure were illegal because defendant had not given his consent for the search. Defendant argues that he had standing to seek suppression of the ID card based upon the State's admission that the bedroom belonged to him.

■ We find that defendant had standing to challenge the seizure of the ID card. The record shows that McGee told the police that the bedroom was hers and defendant's. It is clear from the record that the police believed the bedroom belonged, at least in part, to defendant. The trial court, after first doubting whether defendant had standing, accepted defendant's argument that the State's admission that McGee told the police it was defendant's bedroom was sufficient to give defen-

dant standing or act as an admission that defendant had standing. The State's argument that because defendant's counsel admitted not knowing whether defendant lived in the bedroom defendant was deprived of standing is without merit. Immediately after that exchange, the record discloses that what defendant's counsel was arguing was that there was no evidence of where in the house the ID card was recovered. There was more than one bedroom in the house. Once the State represented to the trial court that the ID was located in defendant's bedroom, and the State never refuted its police officers' belief, we find that the trial court properly found that defendant had standing.

■ Having found that defendant had standing, we turn to whether the warrantless search of the bedroom was in violation of defendant's fourth amendment rights. As a general rule, warrantless searches of a residence are *per se* unreasonable. See *Illinois v. Rodriguez*, 497 U.S. 177, 181, 111 L. Ed. 2d 148, 156, 110 S. Ct. 2793, 2797 (1990). However, no warrant is necessary if a person gives consent for a search. *Rodriguez*, 497 U.S. at 181, 111 L. Ed. 2d at 156, 110 S. Ct. at 2797. It is well settled that anyone with common authority over property has the ability to effectively give consent to search that property and it need not be the defendant. *Matlock v. United States*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). The rationale is that a defendant takes the risk that someone with common authority over areas will allow a search of those areas. *Matlock*, 415 U.S. 164, 39 L. Ed. 2d 242, 94 S. Ct. 988. Thus, the question in the present case becomes whether any consent McGee may have given was effective and valid for the search of defendant's bedroom. As a preliminary matter, the State argues that defendant has waived any objection to McGee's consent by failing to raise the issue at trial. In response, defendant argues that he adequately preserved all issues.

In *People v. Walensky*, 286 Ill. App. 3d 82, 615 N.E.2d 952 (1996), the defendant was convicted of possession of a controlled substance with intent to deliver. Before trial, he sought the suppression of evidence based upon a defective warrant. The trial court initially ruled that the facts supporting the warrant lacked probable cause and suppressed the evidence. The State successfully argued a motion to reconsider based upon the "good faith" exception to the fourth amendment. See *United States v. Leon*, 468 U.S. 897, 82 L. Ed. 2d 677, 104 S. Ct. 3405 (1984). The defendant sought an evidentiary hearing to demonstrate the police officer's lack of good faith. The trial court stated it would allow the introduction of such evidence only if the defendant filed a written motion supported by affidavits. The defendant failed to comply with the trial court's order and the request for an evidentiary

hearing was subsequently denied. On appeal, this court held that defendant had waived the issue of the trial court's denial of his request for an evidentiary hearing. The *Walensky* court found that the defendant had failed to adequately preserve the issue by raising it specifically in his posttrial motion for a new trial. In that motion, the defendant simply stated that he was entitled to a new trial based on his "objections during the course of the trial." *Walensky*, 286 Ill. App. 3d at 96. This court found that statement too general "to have alerted the circuit court to any proposed error in its ruling regarding an evidentiary hearing" and, therefore, the defendant had waived the issue. *Walensky*, 286 Ill. App. 3d at 96.

In the present case, defendant was unaware that the police recovered any property from their search. Until he learned that the State was planning on introducing the ID card, he would have had no reason to request an evidentiary hearing. Once he learned of the card, he asked the court for a continuance to investigate the matter and prepare a motion to suppress the evidence. He specifically stated that he would locate a witness to come in and testify at the suppression hearing. Although defendant never mentioned McGee's name specifically during this oral argument, there is no other witness that defendant could have sought to call with respect to this issue. The State and trial court both recognized this fact when they spoke of McGee's consent to allow a search. Additionally, in his posttrial motion, defendant asserted the following errors:

"3. That the Court committed error when it denied the Defendant's motion for a continuance after ruling that the State could use the Defendant's picture ID.

4. That the Court committed error when it denied the Defendant's motion for a continuance in order to proceed on a hearing on Defendant's motion to suppress the picture ID.

5. That the Court committed error when it denied the Defendant's motion to suppress evidence."

It is beyond argument that since defendant was not at the house to give his consent to a search that someone other than defendant must have consented to the search of his bedroom. The only person this could have been was McGee because she was the only person the officers spoke to in the house. Consequently, any motion to suppress the evidence based upon an illegal search would have to address McGee's consent, the scope of that consent, whether the consent was voluntary, and whether she had authority to consent to the search of defendant's bedroom. Defendant's oral argument and written motion to suppress made it clear he was challenging the State's authority to seize the ID card. His posttrial motion made it clear that he was advising the trial

court that he believed it erred in not suppressing the evidence. Unlike *Walensky*, defendant in the present case had informed the trial court what rulings he objected to, not just a blanket statement of all objections he made during the course of trial. Therefore, we find that *Walensky* is distinguishable and that defendant has not waived this issue for review.

■ We turn now to the issue of whether McGee could consent to the search of defendant's bedroom. The record indicates that the police believed McGee shared the bedroom with defendant, who was her boyfriend. Living with another person is a type of common authority. *People v. Steinberg*, 260 Ill. App. 3d 653, 657, 633 N.E.2d 142 (1994). The record, however, is completely silent on what McGee would have testified to at a suppression hearing, and it is silent on whether McGee actually had authority to consent, the scope of her consent given to the police, and the circumstances surrounding that consent. McGee never testified at trial, and the only version of the events the record contains is that of the police officers. As such, it is impossible to determine, without more evidentiary facts, whether McGee actually had authority to consent to a search of the bedroom. The question then arises whether the police could have reasonably relied on apparent authority to consent if the person consenting did not have actual authority.

In *Rodriguez*, the defendant was charged with possession of a controlled substance with intent to deliver. The police discovered the narcotics after a former girlfriend of the defendant's consented to a search of his apartment. The record in *Rodriguez* was unclear whether the girlfriend indicated to the police that she still lived there. When they arrived at the apartment, the girlfriend opened the door with a key she had and consented to the officers entering. In plain view were narcotics. The defendant was asleep in another room containing more narcotics. At that time, the police arrested the defendant. Subsequently, the trial court suppressed all the evidence, ruling that the State had failed to demonstrate the defendant's girlfriend had actual authority to consent to the search. The trial court also ruled that any reasonable belief the officers may have had that the girlfriend possessed authority, even though she did not, would not cure the fourth amendment violation. This court affirmed the trial court, and our supreme court denied the State's petition for leave to appeal. *Rodriguez*, 497 U.S. at 180-81, 111 L. Ed. 2d at 155-57, 110 S. Ct. at 2787. After granting a petition for *certiorari*, while the Supreme Court agreed with this court that the State had failed to demonstrate the defendant's girlfriend had "joint access or control for most purposes" of the apartment and, as such, lacked *actual* authority to consent to a

search of the apartment, the *Rodriguez* Court nonetheless reversed the defendant's convictions and remanded the case, finding that the police properly could have reasonably relied on the girlfriend's *apparent* authority to consent. *Rodriguez*, 497 U.S. at 182, 111 L. Ed. 2d at 157, 110 S. Ct. at 2798. More specifically, the *Rodriguez* Court stated:

"We see no reason to depart from this general rule [of reasonableness] with respect to the facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape." *Rodriguez*, 497 U.S. at 186, 111 L. Ed. 2d at 160, 110 S. Ct. at 2800, citing *Archibald v. Mosel*, 677 F.2d 5 (1st Cir. 1982).

In the present case, there is no direct evidence from McGee or defendant of what McGee's authority within the house was, their relationship, or who lived in the bedroom. The only evidence presented was the hearsay statements of the police officers that McGee told them defendant lived in the bedroom, that she shared the bedroom with him, and that they were romantically involved. As stated above, there was no way for the trial court to determine the scope of McGee's actual authority. There was no evidence of who owned the house, and the registration on the Buick that led the officers to the house in the first place belonged to neither McGee nor defendant. The trial court never actually ruled on McGee's authority or consent. In its ruling, the trial court accepted the State's representation that, in a prior motion on a related case, McGee was found to have consented to the search and that the bedroom McGee claimed as hers was one she shared with defendant. However, without more evidentiary facts, it is impossible for us to determine whether the police reasonably relied on any statements McGee may have made.

Defendant next argues that he was entitled to an evidentiary hearing regarding the admissibility of the ID card outside the presence of the jury. The State contends otherwise and further argues that the ID card was properly admitted to demonstrate the officers' investigatory process. The State also argues that even if the police had not searched the residence and found defendant's ID card, it would still have located defendant because McGee had given the police defendant's full

name when asked who was driving the Buick, thus making any error harmless.

In *People v. Robinson*, 46 Ill. 2d 229, 263 N.E.2d 57 (1970), the defendant was convicted of armed robbery. On appeal, the defendant argued, and the record established, that he was denied a fair hearing on his motion to suppress evidence of his identification. Our supreme court held that, under the circumstances of the case, "there is no question that a defendant has a right to a fair and impartial hearing to determine whether his identification was based solely on the victim's observation of the robber at the time of the crime or whether it was improperly influenced." *Robinson*, 46 Ill. 2d at 231-32; see also *People v. DeJesus*, 163 Ill. App. 3d 530, 533, 516 N.E.2d 801 (1987) (following *Robinson*); *People v. Stiles*, 95 Ill. App. 3d 959, 964-65, 420 N.E.2d 1204 (1981) (holding it "is fundamental that a defendant is entitled to a full and fair hearing on [a] motion to suppress").

In attempting to distinguish *Robinson* and the other cases relied upon by defendant, the State argues that in the present case defendant was given a suppression hearing at which he failed to offer evidence that McGee's consent was not given voluntarily or even that McGee's consent was an issue in the case. In *People v. Gacho*, 122 Ill. 2d 221, 229, 522 N.E.2d 1146 (1988), relied upon by the State, the defendant claimed his fourth amendment rights were violated when the State impermissibly interjected a victim's statement into evidence through a police officer. The *Gacho* court held that the substance of the conversation was admissible to show the officer's investigatory procedure, based on the officer's personal knowledge, and "is admissible although the inference logically to be drawn therefrom is that the information received motivated the officers' subsequent conduct." *Gacho*, 122 Ill. 2d at 248.

■ In the present case, defendant made it clear to the trial court as soon as he became aware of the ID card, and the State's proposed use of it, that he wanted a continuance to investigate and prepare a motion to suppress. We find the State's argument, that defendant was afforded a "full and fair hearing," disingenuous. There could have been no way for defendant to prepare an argument for the suppression of a piece of evidence he did not even know was in the possession of the police until immediately before the trial court's ruling. Defendant did not have the opportunity to call witnesses because he could not have anticipated the need to do so before the State disclosed the location of the ID card. Defendant could not make arguments to the trial court without first investigating the facts surrounding the seizure of the ID card. Until he became aware that the police had seized property to be used at trial, there would have been no reason for defendant

to file a motion to suppress and no reason to question McGee. Only once it became apparent that the actions of the police in retrieving evidence during a warrantless search would produce evidence against him was defendant aware that there was evidence subject to suppression. In fact, even in *Gacho*, the case relied upon by the State, the defendant was afforded a full evidentiary suppression hearing where witnesses testified *before* the trial court made a ruling on the admissibility of the contested evidence. Accordingly, we find that, based on *Robinson* and *Stiles*, the trial court erred in denying defendant's request for a full evidentiary hearing on his motion to suppress.

■ Defendant next argues that the State either should have been barred from using the ID card as a sanction for failing to disclose it or, in the alternative, he should have been granted a continuance to investigate the evidence and prepare a motion to suppress. The State argues that defendant was not entitled to any sanctions against it or a continuance because it did tender the ID card to defendant and immediately notified him when it was apparent the ID card was inventoried under another defendant's name. The State further argues that defendant's counsel was on notice that the ID card was inventoried because counsel represented all the other defendants in related cases, including the one in which the ID card was inventoried. The State also argues that defendant was given a suppression hearing and, even if he did not receive the hearing as he so argues, he has waived this issue by failing to properly preserve his objection.

For the reasons previously discussed above, we find that defendant has not waived this issue on appeal. As to the merit of defendant's argument, the record shows that the State disclosed that it possessed the ID card the night before opening statements, after defendant's trial had begun. The State informed the trial court it intended to introduce the ID card as evidence for the limited purpose of establishing the officers' course of conduct in identifying defendant. The previous day, however, defendant had questioned the State on whether any photographs or other materials had not yet been disclosed, and the State answered that everything had been disclosed. The State maintains, nonetheless, that it did not violate the discovery rules because the document was tendered, and even if it did violate the rules, any violation was harmless.

In *People v. Chambers*, 258 Ill. App. 3d 73, 629 N.E.2d 606 (1994), the defendant was charged with delivery of a controlled substance. He was arrested for selling narcotics to an undercover police officer. At his trial, the State introduced police photographs of the defendant that the officers used to confirm his identity. In addition, the State elicited testimony about how the police received their initial information about

the defendant, mainly by filling out a contact card when he was interviewed immediately after the sale, but before he was arrested. On appeal, the defendant claimed the State failed to timely present the contact card and police photographs to him and as such violated the discovery rules. The *Chambers* court held that any argument relating to the contact card had been waived by the defendant in failing to raise it at trial or in a posttrial motion. As for the photographs, the court noted the general rule that Supreme Court Rule 412, relating to discovery, "is mandatory, and compliance is only excused when the State, exercising due diligence, could not have learned of the information before trial." *Chambers*, 258 Ill. App. 3d at 86. However, the *Chambers* court noted that not every instance of noncompliance will automatically necessitate a new trial. A new trial is only necessary when the defendant was prejudiced. *Chambers*, 258 Ill. App. 3d at 86. The court further noted that "[a]mong the factors to be considered in determining whether a new trial is required because of a discovery violation are the closeness in the evidence, the strength of the undisclosed evidence, and the likelihood that prior notice could have helped discredit the undisclosed evidence." *Chambers*, 258 Ill. App. 3d at 86. It is the defendant's burden to demonstrate how he was prejudiced and to show how earlier disclosure " 'would have altered [his] trial strategy and possibly changed the outcome of the case.' " *Chambers*, 258 Ill. App. 3d at 86, quoting *People v. Cisewski*, 118 Ill. 2d 163, 173, 514 N.E.2d 970 (1987). In affirming the defendant's convictions, the *Chambers* court found that the defendant had not demonstrated how he was prejudiced by the introduction of the photographs; he had prior knowledge that there were photographs, had not requested a continuance to investigate, and failed to show how previous knowledge would have helped him in discrediting the photographs. *Chambers*, 258 Ill. App. 3d at 86-87.

In *People v. Heinzmann*, 232 Ill. App. 3d 557, 597 N.E.2d 942 (1992), the defendant and a codefendant were charged with stealing pigs. The defendants' first trial resulted in a mistrial after the State failed to disclose some discovery materials. *Heinzmann*, 232 Ill. App. 3d at 558. After declaring the mistrial, the trial court "strongly suggest[ed]" the State sit down with the defendants' attorney and make sure all discoverable materials had been disclosed. *Heinzmann*, 232 Ill. App. 3d at 558. During the examination of the first witness at defendant's second trial, it was discovered that yet another piece of material had not been disclosed. This time it was a prior written statement of a witness, who was also involved in the theft, to the police that also mentioned another individual previously unknown to the defendants. The trial court dismissed all the charges against the

defendants as a result of the State's failure to comply with discovery. *Heinzmann*, 232 Ill. App. 3d at 558. This court affirmed, stating that none of the less severe discovery sanctions would provide acceptable relief to the defendants because the trial had already begun, the jury was sworn, the nondisclosed document contained the name of a potential witness for the defendants who was previously unknown, and any continuance would have highlighted the incriminating testimony of the witness in the jurors' minds. *Heinzmann*, 232 Ill. App. 3d at 561.

In the present case, unlike *Chambers*, defendant did request a continuance to investigate. We do not understand how a short continuance, which, as the *Heinzmann* court noted, is the "preferred sanction for a discovery violation" (*Heinzmann*, 232 Ill. App. 3d at 560), would have substantially prejudiced either side. The State's entire case revolved around the identification of the man the officers saw flee from the Buick. Obviously, any evidence the State sought to introduce relating to that identification is relevant, and defendant should have been given an opportunity to challenge it. However, unlike *Heinzmann*, a lesser sanction than dismissal is appropriate in this case. While we recognize that the jury had been sworn, and the trial court was not at liberty to simply dismiss the jury without implicating double jeopardy concerns (see *People v. Blake*, 287 Ill. App. 3d 487, 490-91, 678 N.E.2d 761 (1997)), we fail to see how a short continuance would have prejudiced either party. Instead, a continuance would have afforded defendant an ability to have a full and fair hearing to which he was entitled on his motion to suppress. Accordingly, we find that the trial court's denial of defendant's request for a continuance was an abuse of discretion. See generally *Robinson*, 46 Ill. 2d at 232-33 (a defendant is entitled to a full and fair evidentiary hearing).

■We also reject the State's argument—that defendant was on notice of the existence of the ID card because his counsel was representing other defendants who lived in the same house, including the defendant whose case the ID card was actually inventoried under—as it is unsupported by the record. The State makes blanket statements that defendant's counsel must have been aware of the information because it was contained in other court files, but it fails to point to anywhere in the record where the information appears. Discovery documents from another case arising from the seizure of narcotics from the same house appear in the record but nowhere in that report does the ID card appear, even though there is a long narrative of events and a long list of narcotics, currency, and weapons inventoried. Moreover, assuming *arguendo* that the ID card was disclosed during the course of the case of another defendant who was represented by

the same counsel representing both defendants in separate trials, the State fails to cite to authority, and our research reveals none, supporting its argument that the disclosure in one defendant's case can be deemed to have been disclosed pursuant to a discovery request in another defendant's case.

The State also argues that even if the trial court should have granted a continuance and had a full evidentiary hearing on defendant's motion to suppress, reversal is not necessary because the error was harmless beyond a reasonable doubt. Defendant argues that it is impossible to determine whether the error was harmless.

■ A harmless error is one where "a reviewing court [is] satisfied beyond a reasonable doubt that the error did not contribute to the defendant's conviction." *People v. St. Pierre*, 122 Ill. 2d 95, 113-14, 522 N.E.2d 61 (1988). "[T]o determine whether an error is harmless, 'it is necessary to review the facts of the case and the evidence at trial' to determine the effect of the unlawfully admitted evidence 'upon the other evidence adduced at trial and upon the conduct of the defense.' " *St. Pierre*, 122 Ill. 2d at 114, quoting *Fahy v. Connecticut*, 375 U.S. 85, 87, 11 L. Ed. 2d 171, 173-74, 84 S. Ct. 229, 230-31 (1963).

■ Defendant here has failed to demonstrate how the introduction of the ID card, used simply in the identification of defendant, prejudiced him. See *Chambers*, 258 Ill. App. 3d at 86. Additionally, defendant has failed to show how earlier disclosure would have altered his trial strategy or possibly changed the outcome of the case. See *Chambers*, 258 Ill. App. 3d at 86. Since the police officers had all the information they needed to identify defendant, based on their discussion with McGee, before even seeing any photographs of defendant or the ID card, and could have used this previously obtained information to identify defendant, we find that any error in failing to hold an evidentiary hearing and allowing introduction of the ID card was harmless beyond a reasonable doubt.

In summary, since the State had conceded, and the trial court properly found, that defendant had standing to challenge the search of his bedroom and the seizure of the ID card, and there was no evidence that a short continuance would have unduly prejudiced the State, it was error for the trial court not to continue the matter and hold an evidentiary hearing to determine the factual question of what authority McGee had to consent to a search and whether it was reasonable for the officers to rely on her assertion of authority if in fact she had no actual authority. However, the officers would have discovered all the necessary facts of defendant's identification with the information they previously obtained from McGee, mainly defendant's name. Therefore, we hold that defendant was not prejudiced, and the trial

court's error in denying him a continuance and an evidentiary hearing, was harmless, and does not require reversal for a new trial or a remand for a hearing on his motion to suppress.

■ We also reject defendant's additional contention that he was denied a fair trial "when officer Jedlowski testified, over objection, that he ran a check at the police station on the defendant's State of Illinois identification card and on the defendant and a positive result came back from the check." Defendant argues the testimony tended to show that he was a bad person who had prior contact with the police. Defendant further argues that since he turned himself in to the police, any testimony concerning the officers' attempt to procure a warrant against him became irrelevant. The State argues that the testimony of the actions taken by Jedlowski after receiving defendant's name was admissible to show the officers' investigatory procedure based on the officers' direct knowledge.

Defendant fails to cite to authority in support of the proposition that an officer's testimony concerning his procedures after receiving information to investigate is inadmissible. There was no evidence presented that the officer stated he ran a criminal history check on defendant which came back positive. Nor does defendant cite to any authority in support of his argument that simply because a defendant surrendered himself makes the officers' attempt to procure a warrant irrelevant. On the contrary, we believe it is logical that there would have been no reason for defendant to surrender himself had a warrant not been issued. Defendant did not surrender himself during the day after the seizure of the evidence, but instead waited until after he knew the police were looking for him.

In *People v. Griggs*, 104 Ill. App. 3d 527, 432 N.E.2d 1176 (1982), the defendant was charged with armed robbery. During his trial, a police investigator testified that after speaking with a witness, he went back to the police station and ran a partial license plate that subsequently came back registered to the defendant. This court held that the testimony was proper. Specifically, the *Griggs* court found, citing with approval the rule articulated in *People v. Dunning*, 88 Ill. App. 3d 706, 410 N.E.2d 1052 (1980), that "[w]here a police officer testifies that he had a conversation with an individual and that he subsequently acted thereon, without revealing the substance of the conversation, such testimony is based upon the officer's personal knowledge and is competent to show the officer's investigatory procedure." *Griggs*, 104 Ill. App. 3d at 531, citing *Dunning*, 88 Ill. App. 3d at 709.

In *People v. Wilson*, 168 Ill. App. 3d 847, 523 N.E.2d 43 (1988), the defendant was convicted of murder and attempted armed robbery. On

appeal, he argued the trial court erred in admitting an officer's testimony concerning the officer's investigatory procedures. At the trial, a police detective testified that he received an anonymous telephone call and, as a result, gathered evidence on the defendant's accomplice and arranged for a witness to view a photobook with the accomplice's photograph in it. *Wilson*, 168 Ill. App. 3d at 849. The detective testified that after the accomplice's arrest and questioning, the defendant became a suspect. This court, in reaffirming the rule established in *Dunning* and *Griggs*, further stated that "[w]here such testimony is confined strictly to the officer's physical activities, the bare occurrence of the conversation and the testimony is subject to cross-examination, this evidence is not within the legal definition of hearsay." *Wilson*, 168 Ill. App. 3d at 850, citing *People v. Sanders*, 37 Ill. App. 3d 236, 345 N.E.2d 757 (1976).

In the present case, Officer Jedlowski testified that after he asked McGee, "Do you know whose car this is?" she took him downstairs to defendant's bedroom. After recovering the ID card, Jedlowski then ran a check on defendant and received a result from that check. The evidence Jedlowski testified to was confined to his physical activities and Jedlowski was subject to cross-examination. The evidence in the present case, like that in *Griggs* and *Wilson*, demonstrated Jedlowski's investigatory procedure and, as such, we find that it was not error to admit the testimony.

For the reasons stated, we therefore affirm defendant's convictions and sentences.

Affirmed.

CAHILL, P.J., and LEAVITT, J., concur.